407 So.2d 1183 (1981)
STATE of Louisiana
v.
Wallace ISTRE.
No. 81-KA-0943.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied January 25, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Jack D. Miller, Asst. Dist. Atty., for plaintiff-appellee.
Timothy Jones, Lafayette, for defendant-appellant.
ROBERT J. KLEES, Justice Ad Hoc.[*]
Defendant, Wallace Istre, was charged by indictment with the crime of aggravated *1184 rape, a violation of La.R.S. 14:42. After defendant pled not guilty, and not guilty by reason of insanity, he was tried on September 19, 1980 before a twelve person jury which found him guilty as charged. Thereafter, the court sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence. The defendant now appeals on the basis of four assignments of error which revolve around the admissibility of defendant's inculpatory statement made while in custody.
FACTS:
Defendant, a 19-year-old borderline retardate, was arrested on April 18, 1980 for aggravated rape of his three year old niece. On this date, the victim's mother had left her at home with her uncles as babysitters for the day. Some time during the morning a neighbor, hearing the child crying outside, found her bleeding from the vagina. The neighbor brought the child to the hospital where she was examined and treated. The defendant was subsequently picked up and questioned concerning the child's injuries. His confession, given at this questioning, resulted in his arrest and conviction.
The three-year-old victim did not testify at trial. Apart from medical testimony relating to her injuries, defendant's custodial confession thus formed the heart of the state's case against him.
The confession was taken subsequent to the defendant's arrest, and conducted by Detective Louis Robbins and Police Officer Walter Harrington of the Acadia Parish Sheriff's Department in the presence of the defendant's sister-in-law, Betty Istre. The defendant gave a confession at this interrogation which was the subject of a motion to suppress on August 29, 1980. The defendant objects to the denial of this motion on the grounds that there was insufficient explanation of his rights and the consequences of their waiver which vitiated a knowing and intelligent waiver. Defendant also objects to the introduction of the confession on the grounds that as an arrestee in a custodial interrogation it was made out of fear and duress produced by the interrogating officer's statement.
Assignment of Error No. 1
This argument relates to the defendant's capacity to waive his constitutionally guaranteed rights as set forth in the Miranda decision. As a borderline retardate the state must show that he understood the rights being read to him and that he could appreciate the possible consequences of waiving those rights. State v. Anderson, 379 So.2d 735 (La.1980).
In support of his arguments, defendant relies on trial testimony of Dr. H. P. Wyatt, Detective Louis Robbins, Officer Walter Harrington, Betty Istre, and Wallace Istre.[**]
Dr. Wyatt was a court-appointed clinical psychiatrist who examined the defendant whom he classified as a borderline retardate with a verbal I.Q. of 68 and a performance level of 71. The defendant relied on Dr. Wyatt's testimony that due to defendant's mental retardation, the stress inherent in a custodial interrogation situation would compound his inability to cope and understand the nature and consequences of that type of proceeding. He indicated that defendant could understand technical words in a situation where, such as his examination, he took the time to stop and discuss whatever the defendant did not understand. This testimony was used to support the defendant's position that he could not understand the rights read to him under the stress of a custodial interrogation where additional time and explanations were not available.
*1185 Detective Robbins testified that he was aware of the defendant's mental incapacity and asked the defendant's sister-in-law, Betty Istre, to attend the interrogation. The waiver of rights form was read, without explanation or review, in approximately five minutes. The only responses made by the defendant were noddings of his head. Neither the defendant, nor Betty Istre, read the waiver form. Officer Robbins hand wrote the voluntary statement in response to questions given defendant which was completed in ten minutes. Robbins recalled that the defendant did not speak until he was informed that he did not have to talk if he did not want, but he would just be taken upstairs and booked. The record reflects that Robbins said:
A. I asked, first I filled out the date, then I filled out the place, then I put down the time and then his name, which I knew, on this form, and then when I got to his age, I asked him how old he was, and he didn't say anything. So, I looked up at him and said, `Wallace, how old are you?' He didn't say anything. I said, `what is your date of birth?' and he still didn't say anything. So, I said, `now, Wallace, I read you your rights, if you don't want to give a statement, that's fine', I said, `that's your right', and I said `I'll just take you up to the jail and book you which is what we do when people don't want to talk.' And that's when Mrs. Istre jumped in and she said `you don't understand, he doesn't know his age' and this and that, so, she gave me a little bit of information.
The testimony of Officer Harrington and Betty Istre supported that of Robbins.
Counsel argues that, considering the medical and factual testimony herein, there is substantial doubt as to defendant's knowingly and intelligently waiving his rights to make the confession. Counsel contends that defendant's mental incapacities combined with the stressful situation of the custodial interrogation made a knowing and intelligent waiver of his constitutional rights impossible.
This Court has addressed the issue of a mentally retarded person waiving his constitutional rights in State v. Anderson, supra, at 736 when it said:
We have held that moderate mental retardation and low intelligence or illiteracy do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Collins, 370 So.2d 533 (La.1979); State v. Neal, 321 So.2d 497 (La.1975); State v. Nicholas, 319 So.2d 361 (La.1975); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971). The critical factor in all such cases is whether or not the defendant was able to understand the rights being explained to him.
The defense relies heavily on Anderson, supra, in brief as a case on point since the facts are similar to the case at bar. In Anderson, the defendant was a mentally retarded 17-year-old with an I.Q. between 50 and 69. He had the mental age of an eight-year-old, and although he was educable, he could not read but only print his name. The testimony of the police officers who took Anderson's statement was ambiguous as to whether the defendant understood the rights which they attempted to explain to him. This Court ruled that Anderson did not understand his rights and did not appreciate the possible consequences thereof, and thus was incapable of knowingly and intelligently waiving his Miranda rights. The confession was suppressed.
The defense distinguishes this case and Anderson, supra, from one of the leading cases on mental capacity to waive rights, State v. Collins, 370 So.2d 533 (La.1979). In Collins, the defendant was a 24-year-old, had an I.Q. of 68, he earned a living and supported a wife and two children, he had been subjected to interrogation before when his rights were explained to him extensively. In Collins, two psychiatrists testified that defendant had the ability to understand if his rights were explained.
Here, there is ample testimony herein to support the trial judges' holding that the *1186 defendant was mentally capable of waiving his rights at the time of interrogation.
At the sanity hearing Doctor Wyatt and Doctor Mc Manus testified that the defendant was mentally competent to stand trial. Dr. Wyatt during the trial was specifically shown the waiver of rights form (S-1) and written statement form (S-2) and asked whether the defendant could understand what was on them. His reply is as follows:
A. Yes, I've seen this.
Q. Can Wallace Istre or could he understand what is on that document?
A. Yes sir, I think he could.
Q. That's not the legal testimony that you were talking about, is it?
A. No, these are rather short sentences.
Q. In fact, it says you have the right to remain silent, he can understand that?
A. Yes sir.
Q. And anything you say can be used against you in Court?
A. Yes sir.
Q. That's a lot better than saying you have a right or privilege against self-incrimination, that's what you were talking about, isn't it?
A. Yes sir.
Q. This form is fine, isn't it?
A. Yes.
Q. Now let me show you document marked and introduced as S2. You are familiar with that document, too I believe.
(Thereupon the witness reviews the document)
A. Yes sir, I've seen this.
Q. And would the same go with S2 as it did with S1, this would be a document that, that the defendant could understand?
A. Yes sir.
Q. Now the words that are written in on the statement portion of the exhibit, are those words consistent with the, with the verbalizing that the defendant could do or is capable of doing? In other words, can he make those statements, words like that?
A. Yes. I think this is in keeping with his vocabulary.
Q. That's more in line with his vocabulary that that of Detective Robbins, isn't it?
A. Yes.
Dr. Wyatt also testified at trial that the defendant was capable of marriage, raising a family and paying his bills.
The state has the burden to prove that defendant's mental defect did not preclude him from giving a voluntary and free confession with a knowledgeable and intelligent waiver of his rights. State v. Coleman, 369 So.2d 1286 (La.1979); State v. Trudell, 350 So.2d 658 (La.1977). As set forth in Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), the Supreme Court restated the principles from Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that govern a custodial statement once the required warnings have been given:
"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694.
The trial testimony of Officers Robbins and Harrington indicated that the inculpatory statement was freely and voluntarily given and that the defendant nodded "up *1187 and down" in response to the reading of his constitutional rights.
Although the sanity hearing record reflects that the defendant is a borderline retardate; he had completed the sixth grade and additionally worked off shore. Both officers admitted that they knew the defendant and the defendant's mental deficiencies and lack of education and knowing him in his community setting, they accepted a nod of defendant's head as an indication of his understanding, as they felt that he understood.
We have thoroughly reviewed the testimony in this case and find the evidence supports the trial court's findings that the confession was freely and voluntarily given.
This assignment is without merit.
Assignments of Error Nos. 2, 3 and 4
By these assignments, defendant argues that the trial court erred in denying his motion to suppress the confession since there was insufficient evidence to support that decision. Furthermore, the state did not meet its burden of proof that the statement was freely and voluntarily given since there was evidence of fear and duress by threats.
Defendant points to the testimony of three witnesses; Officer Robbins, Officer Harrington, and Betty Istre, who stated that the defendant did not make any statements prior to the time that Officer Robbins told him in effect, "You do not have to say anything if you do not want to, we will just take you upstairs and book you." Defendant urges that this was a threat to him since there was no further explanation of booking or of his alternatives.
As set forth in State v. Fisher, 380 So.2d 1340, 1343 (La.1980), this Court has repeatedly held that:
Before a confession may be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and was not made under the influence of fear, duress, intimidation, menaces, inducements or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(C). It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977); State v. Adams, 347 So.2d 195 (La.1977); State v. Ross, 343 So.2d 722 (La.1977).
According to the trial transcript, Officer Robbins said to the defendant, "So, I looked up at him and I said, `Wallace, how old are you?' He didn't say nothing. I said, `What's your date of birth?' and he still didn't say anything. So I said, `Now Wallace,' I said, `I read you your rights, if you don't want to give a statement, that's fine', I said, `that's your right,' and I said, `I'll just take you up to the jail and book you,' which is what we do when people don't want to talk."
It was after this that Wallace Istre gave his confession. Robbins testified that he never explained to the defendant what he meant by upstairs and booking him. The testimonies of both Officer Harrington and Betty Istre corroborate Robbins' version of this statement. But, both officers claim that it is customary to tell an arrestee that he will be taken upstairs and booked if he doesn't want to talk. The above statement may be of no consequence to a person of average intelligence and here the trial court found that there was no threat made. We agree.
Both Detectives Robbins and Deputy Harrington testified that they requested Miss Betty Istre to sit in on the questioning of the defendant. Detective Robbins testified that although the defendant was 19-years-old *1188 he did that as a precaution, since he knew the defendant's education and that he couldn't read or write.
Additionally both officers indicated that although defendant did not give a yes or no answer he shook his head affirmatively when read the various forms and they felt that he understood.
The defendant argues lastly that the trial court failed to hold the state to the burden of proof required by La.R.S. 15:451 and La.C.Cr.P. Art. 703(C) and denied the motion to suppress on insufficient evidence to support the state's burden. The argument spans not only the present claim of a threat used to induce the statement but also the question of defendant's mental capacity to make a knowing Miranda waiver discussed above.
After reviewing the trial transcript the only evidence to support the state's burden of proving that the confession was free and voluntary are the officer's testimony that there was no threat or coercion.
Since this defendant was a borderline mental retardate the state had a burden to make sure the defendant's waiver was knowingly and intelligently made.
Here, as discussed in the previous assignments of error, the record does reflect sufficient evidence to find the state has met its burden to insure that the inculpatory statement and waiver of rights were made freely and voluntarily.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
DIXON, C. J., and DENNIS, J., dissent with reasons.
CALOGERO, Justice, concurring.
I agree that defendant's statement was properly admitted into evidence. As the majority notes, one member of the sanity commission testified at trial that defendant could understand the waiver of rights form and the written statement form which were read to him prior to his making the challenged statement. These forms express the Miranda rights in simple language.
According to the sanity commission, defendant was capable of marrying, raising a family and paying his bills. Furthermore, defendant had worked offshore. The ability to carry on these activities has led us in the past to conclude that an accused was mentally capable of waiving his right to counsel and giving a statement which could be admitted into evidence against him. State v. Jolla, 384 So.2d 370 (La.1980); State v. Collins, 370 So.2d 533 (La.1979).
I respectfully concur in affirming defendant's conviction and sentence.
DIXON, Chief Justice (dissenting).
I respectfully dissent, not understanding how a nineteen year old mentally retarded person, who did not know his own age, accused of aggravated rape, could intelligently waive the assistance of counsel.
DENNIS, Justice, dissenting.
I respectfully dissent.
It does not appear that the state carried either its heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel, Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), or its burden of proving beyond a reasonable doubt that the confession was free and voluntary. State v. Glover, 343 So.2d 118 (La. 1976).
NOTES
[*] Judges Ned E. Doucet, Jr., Court of Appeal, Third Circuit, and Judges Thomas J. Kliebert, and Robert J. Klees, Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices ad hoc joined by Chief Justice John A. Dixon, and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack C. Watson.
[**] The defense argument in brief relies on the testimony taken at trial, and not at the motion to suppress. This Court has indicated on several occasions that it will consider the record as a whole, including trial testimony, in determining the correctness of a trial court's ruling on a motion to suppress. State v. Gould, 395 So.2d 647 (La.1981); State v. Chopin, 372 So.2d 1222 (La.1979); State v. Schmidt, 359 So.2d 133 (La. 1978); State v. Dunbar, 350 So.2d 956 (La. 1978).