461 So.2d 1253 (1984)
STATE of Louisiana
v.
Anthony THOMAS.
No. 84 KA 0310.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Writ Denied March 15, 1985.
*1254 Ossie Brown, Dist. Atty. by Brenda Creswell, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Anne L. Jordan, Appellate Counsel, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
Anthony Thomas was charged with committing the crime of armed robbery in violation of La.R.S. 14:64. Thomas filed a motion to suppress the confession and physical evidence, which motion was denied by the trial court. Subsequently, Thomas pled nolo contendere, reserving his right to appeal the denial of the motion to suppress. He was sentenced to be imprisoned at hard labor in the custody of the Louisiana Department of Corrections for a term of 15 years, without benefit of probation, parole, or suspension of sentence.
On February 24, 1982, a black male wearing a mask entered the Ellis Grocery store in Baton Rouge, pointed a gun at the female clerk and demanded the money from the cash register. She gave him a white sack of money and he fled. Several days later, two Baton Rouge police detectives, Englade and Cantu, went to the store to question the clerk about the robbery. Upon leaving the store, they were approached by two young girls who stated that they saw defendant come out of the store and run down the street the night of the robbery. The girls did not want to be identified. Another girl who identified herself said that defendant had approached her and some friends the night of the robbery, looking for a stocking mask.
On March 5, 1982, the detectives went to the house of Thomas' father looking for Thomas. Thomas was there and the detectives asked him to go downtown[1] for questioning since they had no warrant. Defendant accompanied them downtown, was advised that he was a suspect in the robbery, and was given his Miranda rights. *1255 Subsequently, he gave a statement confessing to having committed the robbery. The detectives then proceeded to tape his confession after carefully explaining his rights to him again. As a result of the confession, the mask used in the robbery was recovered. Another source led to the recovery of Thomas' gun which was similar to the gun used in the robbery.
Defendant assigns as error the trial court's denial of his motion to suppress his confession and the physical evidence. In his brief, defendant makes the following arguments:
1. Defendant's statement should be suppressed as it was a direct result of an arrest without probable cause.
2. Defendant's confession was not given freely and voluntarily as he was incapable of waiving his Miranda rights and, furthermore, Detective Englade promised him a more lenient sentence to induce him to confess.

I.
Since Thomas contends that his confession was the product of an illegal arrest, we must first determine whether he was, in fact, under arrest when he gave his statement. "An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest." State v. Ruffin, 448 So.2d 1274, 1279 (La. 1984).
Detective Cantu testified that he and Detective Englade asked Thomas to come with them voluntarily and he agreed.[2] Cantu further testified that no threats were made to get Thomas to go downtown. Finally, Cantu stated he did not believe Thomas could have gotten the impression that he had to go downtown because Thomas was specifically told that he did not have to go with them.
Thomas testified that had he been given a choice, he would not have gone with the officers. He later testified, however, that he was not under arrest when he went downtown. Dr. Braham, a licensed clinical psychologist, testified that Thomas was mentally retarded with an I.Q. of 66 and functions at an age level between 9 and 12 years of age. Dr. Braham further testified that he doubted whether Thomas "could have abstracted a negative response to a request from a policeman."
Thus, the record reflects conflicting testimony as to whether an arrest was effected prior to taking Thomas downtown or the taking of Thomas' statement. Since the trial judge denied the motion to suppress, he obviously believed the testimony of Detective Cantu.
A trial judge's conclusions as to the credibility of the witnesses are to be accorded great weight. State v. Vessell, 450 So.2d 938 (La.1984). The evidence is sufficient to support a finding that Detectives Cantu and Englade did not attempt to effect a restraint, extended or otherwise, of Thomas' liberty. We find, therefore, that Thomas was not arrested before he confessed. Consequently, we need not address the issue of whether there was probable cause to arrest Thomas.

II.
Thomas alleges that his confession was not given freely and voluntarily because he was incapable of waiving his Miranda rights. Thomas argues that he was incapable of understanding and waiving his rights in that he has an I.Q. of 66 and a mental age between 9 and 12 years of age.
The Louisiana Supreme Court has held that moderate retardation and low intelligence do not of themselves vitiate the ability to knowingly and intelligently waive one's Miranda rights and make a voluntary confession. State v. Benoit, 440 So.2d 129 (La.1983) and State v. Lewis, 412 So.2d *1256 1353 (La.1982). Rather, the critical factor is whether or not the defendant was able to understand the rights being explained to him. Lewis, 412 So.2d at 1355.
The transcript of the confession shows that the detectives carefully explained the Miranda warnings to Thomas before he gave the taped statement. The detectives did not proceed until they were satisfied that Thomas did understand his rights and was freely and voluntarily waiving them. Thomas' statement was coherent and contained detailed facts which probably would have been known only by the perpetrator. Further, he understood the questions asked of him and responded with little difficulty.
Additionally, Thomas argues that the State failed to specifically rebut his testimony that Detective Englade promised him a more lenient sentence to induce him to confess. Only Detective Cantu testified at the suppression hearing and the State presented no rebuttal evidence.
Cantu testified that neither he nor Detective Englade made any threats or promises to induce Thomas to confess. Cantu specifically denied making any promise of a more lenient sentence. Cantu also testified that he was present the entire time Thomas was questioned and knew that Englade made no such promise.
"Before a confession or inculpatory statement can be introduced in evidence, the State bears a heavy burden of proving affirmatively and beyond a reasonable doubt that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises." C.Cr.P. art. 703; La.R.S. 15:451; Vessell, 450 So.2d at 942. The State must specifically rebut a defendant's specific allegations of police misconduct in eliciting a confession. It is not necessary that the State wait until after the defendant's case-in-chief to meet the allegations, rather it may anticipatorily rebut a defendant's allegations of force or coercion. Vessell, 450 So.2d at 942-943.
We find Detective Cantu's testimony that neither he nor Detective Englade made any threats or promises to induce the confession sufficiently rebutted Thomas' allegations. Further, Thomas' testimony contained several inconsistencies which cast doubt upon Thomas' credibility.
The trial court did not err in finding that Thomas knowingly and intelligently waived his Miranda rights and that the confession was not the result of threats or coercion. The denial of the motion to suppress the confession and physical evidence was proper.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] "Downtown" is a colloquialism for the Baton Rouge Police Department office.
[2] Detective Englade did not testify at trial but did testify at a preliminary hearing conducted prior to the hearing on the motion to suppress. Englade's testimony was consistent with Cantu's testimony.