607 So.2d 775 (1992)
STATE of Louisiana
v.
Wade MARTIN.
No. 91 KA 1193.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
*777 William M. Quin, Duncan Kemp, III, Corbett Ourso, Office of Dist. Atty., Amite, for plaintiff-appellee.
Richard Chaffin, Baton Rouge, for defendant-appellant.
Before WATKINS, CRAIN and GONZALES, JJ.
WATKINS, Judge.
The defendant, Wade Martin, and two co-defendants, Shirley Jones Davidge and Lola Mowers, were charged by grand jury indictment with conspiracy to commit murder (Count 1), a violation of LSA-R.S. 14:26, and second degree murder (Count 2), a violation of LSA-R.S. 14:30.1. The defendant pled not guilty and, after trial by jury,[1] was found guilty as charged on Count 2. The defendant was not tried on Count 1, and the record gives no indication as to the status or disposition of this charge. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging fourteen assignments of error, as follows:
1. The trial court erred in curtailing defense counsel's voir dire examination of prospective juror, Linda Lee Faunce.
2. The trial court erred in allowing the crime scene videotape to be introduced into evidence without the establishment of a proper chain of custody.
3. The trial court erred in allowing the inflammatory and gruesome crime scene videotape to be introduced into evidence.
4. The trial court erred in denying defendant's motion to suppress his confessions.
5. The trial court erred in allowing State Exhibit 11 to be introduced into evidence.
6. The trial court erred in allowing non-expert State witnesses to testify as to their impression and/or opinion on the defendant's state of mind during his confessions.
7. The trial court erred in denying the defendant's motion for expert testimony and records regarding his mental capacity to determine the voluntariness of his confession.
8. The trial court erred in allowing the defendant's oral and tape-recorded confessions to be introduced into evidence.
9. The trial court erred in limiting defense counsel's questioning of lay witnesses regarding the voluntariness of the defendant's confession.
10. The trial court erred in allowing State Exhibit 8 into evidence.
*778 11. The trial court erred in allowing State Exhibit 15 into evidence.
12. The trial court erred in denying the defendant's motion for a mistrial.
13. The defendant was denied the effective assistance of counsel at trial.
14. "Errors patent on the record in relation to the ineffectiveness of counsel."
Assignment of error number ten was not briefed on appeal and, therefore, is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
In April of 1987, the defendant decided to kill the victim, Ben Eddie Davidge. The victim and his wife, Shirley Jones Davidge, who was the defendant's mother, operated Three Oaks Lounge in Albany, Louisiana. The defendant and an accomplice, Lola Mowers, formulated a plan to kill the victim. According to this plan, Ms. Mowers would drive the victim to an isolated spot and then make an excuse for stopping her car. When the victim got out of the car, the defendant, who would be waiting nearby, would shoot him with a 30.06 hunting rifle borrowed from his brother, James Martin.
On the night of April 14, 1987, the defendant and Ms. Mowers executed their plan. Ms. Mowers drove the victim to an isolated spot on a dirt road just off La. Hwy. 442 in Tangipahoa Parish, and the defendant came out of the woods nearby and got into position. When Ms. Mowers stopped the car, the victim opened the passenger door, walked to the rear of the car, and urinated. Meanwhile, defendant used the interior light from the car to aim the rifle. From a short distance he fired a shot into the victim's back, piercing the heart and both lungs, which shot resulted in the victim's death. The defendant approached the victim and fired a second shot into his neck. The defendant and Ms. Mowers then fled from the scene in separate vehicles.
An investigation of the homicide quickly focused upon the defendant, who eventually made oral and taped confessions. The defendant explained that he killed the victim because of their poor relationship, and especially because of the victim's frequent verbal and physical abuse of the defendant's mother. The defendant admitted that the first shot into the victim's back was deliberate. However, he explained that the second shot, which struck the victim in the neck, resulted when Ms. Mowers bumped or hit his arm and caused the rifle to discharge accidentally.
ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, the defendant contends that the trial court erred in curtailing defense counsel's voir dire examination of prospective juror, Linda Lee Faunce.
During defense counsel's voir dire examination of Ms. Faunce, he asked her what she wanted the defendant to prove. The prosecutor objected, but the trial court made no ruling. Defense counsel repeated the question, and Ms. Faunce responded that the defendant should prove his innocence. Defense counsel then asked Ms. Faunce if the defendant should prove his innocence or if the State should prove the defendant's guilt. The trial court then sustained the prosecutor's earlier objection to this line of questioning and noted that this particular question was improper and was more in the nature of "a trick question." The trial court explained that defense counsel could ask questions on the burden of proof provided that he did not confuse the prospective jurors. Defense counsel then objected that the trial court had improperly curtailed his voir dire examination. Thereafter, defense counsel asked Ms. Faunce who had the burden of proof, and she responded that she did not know. Defense counsel then explained that the burden of proof rested solely with the State and that the defendant was not required to prove anything. Ms. Faunce responded that she understood this principle and would accept it.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La.Const. Art. 1, § 17. Louisiana law provides that the trial court, the State, and the defendant shall have the right to examine prospective jurors. LSA-C.Cr.P. art. 786; State v. Bell, *779 477 So.2d 759, 765 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La.1986).
Voir dire examination is designed to discover grounds for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Williams, 560 So.2d 519, 523 (La.App. 1st Cir.1990). The defendant should be allowed to make such inquiries of prospective jurors as will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. His right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the prospective jurors' potential prejudices, predispositions, or misunderstandings relevant to the central issues of the particular case. State v. Bell, 477 So.2d at 766. The scope of voir dire examination is within the sound discretion of the trial court; its rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Williams, 560 So.2d at 523. A review of its rulings should be undertaken only on the record of the voir dire examination as a whole to determine whether or not a sufficiently wide latitude was afforded the defendant in examining prospective jurors. State v. Burton, 464 So.2d 421, 425 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985).
After considering defense counsel's questions in light of the above jurisprudence, we find no abuse of discretion by the trial court. Defense counsel's questions on the burden of proof were clearly confusing to this particular prospective juror. Contrary to the defendant's argument, the trial court did not improperly curtail defense counsel's examination. The trial court clearly explained that defense counsel could resume questioning on the issue of the burden of proof, provided that he did not confuse the prospective jurors. In fact, in accordance with the trial court's ruling, once defense counsel clearly explained who had the burden of proof in the case, Ms. Faunce indicated that she understood this principle and would accept it. Under the circumstances herein, the trial court took prompt action to insure that the prospective jurors would not be confused as to an important legal concept. Its ruling did not unduly restrict defense counsel's voir dire examination on this subject.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. TWO AND THREE:
These assignments of error relate to the introduction into evidence of State Exhibit 2, the crime scene videotape. In assignment of error number two the defendant contends that the State failed to establish a proper chain of custody for the videotape. In assignment of error number three the defendant contends that the videotape was inflammatory, gruesome, and prejudicial.
To be admitted at trial demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized until the time it was offered into evidence. State v. Pittman, 486 So.2d 895, 896 (La. App. 1st Cir.1986). For the introduction of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. State v. Serigny, 481 So.2d 659, 663 (La.App. 1st Cir.1985), writ denied, 484 So.2d 667 (La.1986). Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Spooner, 550 So.2d 1289, 1304 (La.App. 1st Cir.1989), writ denied, 566 So.2d 394 (La. 1990).
At the trial, Tangipahoa Parish Sheriff's Detective Larry Westmoreland testified that he made the crime scene videotape and either kept it in his personal possession or in a locked file cabinet until the day of the trial. The only other person having a key to the filing cabinet was Captain Norman Davidson of the Tangipahoa Parish Sheriff's *780 Office. Det. Westmoreland's testimony provided an adequate chain of custody sufficient to establish that State Exhibit 2 was the same crime scene videotape as the one which he made during the homicide investigation. Furthermore, Det. Westmoreland testified that he had viewed State Exhibit 2 earlier that day (the first day of the trial) and that it was the same videotape he had made during the homicide investigation at the scene of the crime. He also testified that State Exhibit 2 was an accurate representation of the crime scene as it appeared on April 15, 1987.
Photographs that illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted are generally admissible, provided their probative value outweighs any prejudicial effect. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La. 1986). The same rule applies to the admissibility of the videotape. State v. Burdgess, 434 So.2d 1062, 1066 (La.1983); State v. Fleming, 593 So.2d 1298, 1300 (La.App. 1st Cir.1991). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. The admission of the allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Hosford, 572 So.2d 242, 245 (La.App. 1st Cir.1990), writ denied, 576 So.2d 27 (La.1991).
We have reviewed State Exhibit 2 and find that its probative value far outweighs any prejudicial effect. The videotape depicts the area where the victim's body was found. Although it occasionally focuses closely on the victim's body, the videotape cannot be characterized as inflammatory or gruesome.
These assignments of error are meritless.
ASSIGNMENTS OF ERROR NOS. FOUR AND EIGHT:
In assignment of error number four, the defendant contends that the trial court erred in denying his motion to suppress his oral and taped confessions. In assignment of error number eight, the defendant contends that the trial court erred in allowing these confessions to be introduced into evidence at the trial. Specifically, the defendant contends that the State failed to prove that the defendant freely and voluntarily confessed after a knowing and intelligent waiver of his Miranda rights. The defendant argues that, because of drug abuse, diminished mental capacity, brain damage, lack of education, and an inability to read, to write, or to understand, his oral and taped confessions were not voluntary.
The defendant did not file a pretrial motion to suppress. See LSA-C.Cr.P. art. 703. However, during the State's presentation of its case-in-chief, at the prosecutor's request the jury was removed from the courtroom to permit the State to lay the requisite foundation for the introduction into evidence of defendant's oral and taped confessions to Chief Criminal Deputy Willie Johnson of the Tangipahoa Parish Sheriff's Department. See LSA-R.S. 15:451. Both the State and the defense presented evidence on the issue of the voluntariness of the defendant's confessions. At the conclusion of this hearing, the trial court ruled that both of the confessions were freely and voluntarily given after an advice of Miranda rights and, therefore, were admissible at the trial.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451. The State must specifically rebut a defendant's specific allegations of police misconduct in eliciting a confession. State v. Thomas, 461 So.2d 1253, 1256 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1375 (La. 1985). Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. King, 563 So.2d 449, 453 (La.App. *781 1st Cir.), writ denied, 567 So.2d 610 (La. 1990).
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. See State v. Patterson, 572 So.2d 1144, 1150 (La.App. 1st Cir.1990), writ denied, 577 So.2d 11 (La.1991); State v. Sanford, 569 So.2d 147, 150 (La.App. 1st Cir.1990). Whether or not a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La. 1983). The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1st Cir.1983).
With regard to the relationship between diminished mental or intellectual capacity and involuntariness, the Louisiana Supreme Court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Benoit, 440 So.2d at 131. The critical factors are whether or not the defendant was able to understand the rights explained to him and whether he gave a statement voluntarily. State v. Young, 576 So.2d 1048, 1053 (La.App. 1st Cir.), writ denied, 584 So.2d 679 (La.1991).
The State may rely on the presumption of sanity provided in LSA-R.S. 15:432, leaving to the defendant the initial burden of proving the existence of a mental abnormality that, under the circumstances, may have destroyed the voluntary nature of his confession. See State v. Waymire, 504 So.2d 953, 958 (La.App. 1st Cir.1987). Because a defendant is presumed competent, he has the burden of proving a mental defect such that he was unable to understand his Miranda rights and, therefore, incompetent to waive them. State v. Ondek, 584 So.2d 282, 292-293 (La.App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). Once such a mental defect is established, the State bears the ultimate burden of proving that the defendant's mental defect did not preclude him from giving a voluntary and free confession with a knowledgeable and intelligent waiver of his rights. See State v. Istre, 407 So.2d 1183, 1186 (La.1981); State v. Young, 576 So.2d at 1053. Even if the defendant fails to prove the existence of a mental illness or defect, or fails to prove that such a disorder prevented his confession from being voluntary, while the State is not required to negate the defendant's mental abnormality, it still must in all other respects prove beyond a reasonable doubt that the confession was voluntary. State v. Lamark, 584 So.2d 686, 692 (La.App. 1st Cir.), writ denied, 586 So.2d 566 (La.1991).
When the free and voluntary nature of a confession is challenged on the ground that the defendant was intoxicated at the time of the confession, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate the defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether or not intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact, and the trial court's conclusion on this issue will not be disturbed unless unsupported by the evidence. State v. Latiolais, 563 So.2d 469, 472 (La.App. 1st Cir.1990).
At the hearing details surrounding the defendant's oral and taped confessions were provided by the testimony of several law enforcement officers. Det. Larry Westmoreland of the Tangipahoa Parish Sheriff's Office testified that he and Deputy Kearney Foster of the Livingston Parish Sheriff's Office arrested the defendant at approximately 12:01 a.m. on April 16, 1987. Det. Westmoreland advised the defendant of his Miranda rights, but the defendant made no statement at the time of his arrest. According to Det. Westmoreland, the defendant did not appear to be intoxicated.
Livingston Parish Sheriff's Deputy Robert Ardoin booked the defendant into the Livingston Parish Jail at approximately *782 2:05 a.m. on April 16, 1987. At this time, he also advised the defendant of his Miranda rights. In connection with Deputy Ardoin's testimony, the State introduced into evidence State Exhibit 10, the defendant's booking sheet, and State Exhibit 11, a black and white photograph of the defendant taken at the Livingston Parish Jail.
At approximately 2:30 a.m. on April 16, 1987, the defendant spoke with Chief Criminal Deputy Willie Johnson of the Tangipahoa Parish Sheriff's Office. Chief Deputy Johnson did not advise the defendant of his Miranda rights because he was aware that the defendant had already been so advised. According to Chief Deputy Johnson, the defendant gave a free and voluntary oral confession at this time. The defendant's speech was coherent, and he did not appear to be under the influence of alcohol or drugs. Deputy Johnson specifically testified that the defendant was not threatened, coerced, or promised anything in exchange for the confession.
At approximately 4:50 a.m. that morning, Chief Deputy Johnson prepared to take a second statement from the defendant. However, during the advice of rights, the statement was immediately terminated when the defendant requested an attorney.
On the afternoon of April 23, 1987, the defendant informed Randy Pinion, the warden at the Tangipahoa Parish Jail, that he wished to speak with Chief Deputy Johnson. Deputy Pinion related this message to Chief Deputy Johnson. At 3:51 p.m. that afternoon, the defendant gave a taped confession wherein he admitted killing the victim because of the victim's continual beating and verbal abuse of his wife, who was the defendant's mother. Chief Deputy Johnson testified that the defendant was advised of his Miranda rights and waived them before the taped confession. In accordance with this testimony, the State introduced into evidence State Exhibit 12, an advice of rights form signed by the defendant. According to Chief Deputy Johnson, the defendant freely and voluntarily confessed to the murder; the defendant was not threatened, coerced, or promised anything. Chief Deputy Johnson testified that the defendant's speech was coherent and that he did not appear to be intoxicated at the time of this confession.
At the hearing the defendant testified that he was 27 years of age. He stated that as a child he had been classified as a slow learner; he stayed in the same special education class until age 16, when he quit school and began working with his father. The defendant indicated that he had taken medication for his mental condition. Relating to the taped confession on April 23, the defendant testified that he advised the officers he had been in special education in school and that he could not read or write. He also testified that during the taped confession he was under the influence of drugs prescribed by a doctor, and, therefore, he could not talk or think clearly. The defendant stated he was groggy, felt faint, and was fading in and out. He also indicated that he stuttered and slurred words during the taped confession. Finally, relating what he considered to be a threat, the defendant stated that Chief Deputy Johnson said to him, "I have got a place for you." The defendant explained that he took this statement from Chief Deputy Johnson to mean "bringing me to a cell block and beating the hell out of me."
The defendant's sister, Tammy Martin, testified about the defendant's diminished mental ability. She indicated that the defendant had acted in an unusual manner and displayed bizarre behavior most of his life. She testified that the defendant was in special education in school and that he had been tested and treated for brain damage. According to Ms. Martin, in the past she had experienced difficulty in communicating with the defendant. She also testified that the defendant used alcohol, cocaine, and marijuana. On cross-examination, however, Ms. Martin testified that the defendant had been employed as a bricklayer for several years and was employed by a Baton Rouge masonry company at the time of his arrest.
Another sister, Carlene Cannon, also testified about the defendant's diminished mental ability. Ms. Cannon testified that the defendant was in special education in *783 school and also had attended adult special education classes. According to Ms. Cannon, the defendant exhibited mental problems "off and on all of his life." She indicated that the defendant had inherited an illness from her father's side of the family, and on certain occasions she had witnessed the defendant exhibit bizarre or unusual behavior. She also testified that she had experienced problems in communicating with the defendant, but she eventually was able to make the defendant understand.
On rebuttal, Det. Chester Pritchett of the Tangipahoa Parish Sheriff's Office testified that he was present during the defendant's taped confession on April 23. According to Det. Pritchett, the defendant understood his rights and agreed to waive the presence of an attorney. He indicated that the defendant spoke in a coherent manner and did not appear to be under the influence of alcohol or drugs. Det. Pritchett specifically testified that the defendant acted freely and voluntarily in giving the taped confession and that he was not threatened, coerced, or promised anything in return for making the confession.
Chief Deputy Willie Johnson was also recalled to the stand. Chief Deputy Johnson testified that the first request for medical attention made by the defendant occurred on April 24, 1987, the day after his taped confession. According to Tangipahoa Parish Jail records, medication was prescribed for the defendant, and this prescription was filled on April 25. Based on his examination of the jail records, Chief Deputy Johnson concluded that the defendant had not received any medication at the time that he gave the taped statement on April 23.
The trial court ruled that both of the defendant's confessions were admissible. For the reasons which follow, we find no abuse of discretion in the trial court's ruling. Concerning the issues of whether or not the defendant was under the influence of drugs or alcohol and whether or not he was threatened, the trial court obviously accepted the testimony of the State's witnesses and rejected the defendant's testimony. Regarding the issue of the defendant's diminished mental capacity, the trial court concluded that the defendant was advised of his Miranda rights, that he understood and waived these rights, and that he gave free and voluntary confessions. While there is no doubt that the defendant's diminished mental ability resulted in a limited education and an inability to read and write, the testimony of the defendant and his two sisters also indicated that the defendant was able to maintain employment as a bricklayer and that he could function in society. Considering the entire record, especially the tape-recording of the defendant's confession wherein he related specific details of the murder in a coherent fashion and gave reasonably direct responses to questions, we find that the trial court's ruling was correct; therefore, defendant's oral and taped confessions were properly introduced into evidence at the trial.
These assignments of error are meritless.
ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error the defendant contends that the trial court erred in allowing State Exhibit 11 to be introduced into evidence over his objection.
State Exhibit 11 was a black and white photograph of the defendant taken when he was booked into the Livingston Parish Jail at approximately 2:05 a.m. on April 16, 1987. During the hearing on the voluntariness of the defendant's oral and taped confession, which took place outside the jury's presence, the prosecutor offered State Exhibit 11 to show the defendant's physical appearance on the night of his arrest. When the defendant objected on the basis that the photograph was prejudicial, the prosecutor indicated that he did not intend to show the photograph to the jury. The trial court overruled the defendant's objection and allowed the photograph to be introduced into evidence.
LSA-R.S. 15:435[2] provided that evidence sought to be introduced at trial must be *784 relevant to a material issue. In questions of relevancy much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
We find no error in the trial court's ruling. Because it was necessary to determine the voluntariness of the defendant's oral confession, factors such as the defendant's appearance, demeanor, and manner of speech were relevant. State Exhibit 11 was taken approximately 25 minutes before the defendant's oral confession to Chief Criminal Deputy Willie Johnson of the Tangipahoa Parish Sheriff's Office, which took place at the Livingston Parish Jail on the night of the defendant's arrest. Therefore, the probative value of this photograph outweighs any possible prejudicial effect. Furthermore, there is no indication from the record that State Exhibit 11 was displayed to the jury at any time during the trial. Moreover, even if this photograph was improperly displayed to the jury, any such error was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt. LSA-C.Cr.P. art. 921.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. SIX AND NINE:
In assignment of error number six, the defendant contends that the trial court erred in allowing State witnesses, during the hearing on the voluntariness of the defendant's confessions, to give their impressions and/or opinions on the defendant's state of mind. Specifically, the defendant contends that these witnesses were allowed to testify as to whether or not the defendant appeared to be under the influence of alcohol or drugs.
In assignment of error number nine, the defendant contends that, during the hearing on the voluntariness of the defendant's confessions, defendant's sister, Tammy Martin, was not allowed to give testimony concerning the defendant's "use of drugs and their effect on his mental abilities, his limited mental abilities, mental condition, his special education schooling and other points which would affect the defendant's ability to voluntarily confess to this crime." Specifically, the defendant contends that the trial court used a "double standard" by allowing law enforcement officers to give opinion evidence as to the defendant's ability to give free and voluntary confessions, but refusing to allow a defense witness to do the same.
Generally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. State v. Alexander, 430 So.2d 621, 624 (La.1983). Intoxication, with its attendant behavioral manifestations, including disorientation, is an observable condition about which a witness may testify. State v. Neal, 321 So.2d 497, 500 (La.1975). Considering the above jurisprudence, we find no abuse of discretion in the trial court's rulings allowing the officers to testify as to whether or not the defendant appeared to be under the influence of alcohol or drugs at the time of his confessions.
The trial court refused to let Ms. Martin testify as to her impression of the defendant's mental condition. Furthermore, she was not allowed to define the term "special education." Finally, while she was allowed to testify that the defendant used alcohol, cocaine, and marijuana, she was prevented from testifying as to the general effect of these drugs on the defendant's condition. After reviewing all of these rulings in the context in which they were made, we find no error. Although the trial court refused to allow Ms. Martin to testify as to her impression of the defendant's mental condition, it ruled that she could testify about any specific act by the defendant which she actually had observed. Concerning the ruling which prevented Ms. *785 Martin from defining the term "special education," there is no indication in the record that Ms. Martin possessed the expertise or training to give a correct definition of this term. Considering the trial court's ruling that Ms. Martin could not give testimony as to the effect of alcohol and drugs on the defendant's condition, we note that this ruling (which formed the basis of the defendant's "double standard" allegation) actually was made on the grounds of relevancy. The trial court explained that it allowed the police officers to testify as to whether or not the defendant appeared to be under the influence of alcohol or drugs in connection with specific instances, at the time of his confessions. On the other hand the trial court indicated that Ms. Martin's testimony attempting to explain the effect of drugs and alcohol on the defendant's condition was only general in nature. Therefore, the trial court correctly ruled that Ms. Martin's testimony on this matter was irrelevant.
These assignments of error are meritless.
ASSIGNMENT OF ERROR NO. SEVEN:
In this assignment of error, the defendant contends that the trial court "erred in denying defense counsel's motions for expert testimony and records regarding defendant's mental capacity in determining the voluntariness of defendant's confession."
At the hearing on the voluntariness of the defendant's confessions, the defendant attempted to introduce his school records from Escambia County, Florida, which contained information about the defendant's placement in special education classes and his diminished mental ability. The prosecutor objected to the documents on the basis that they constituted inadmissible hearsay evidence. Defense counsel argued that the school records were admissible under the business records or medical records exceptions to the hearsay rule. The trial court sustained the prosecutor's objection and refused to consider the school records. However, the records were labeled Defense Proffer # 1 for purposes of appellate review. When the trial court refused to admit the school records, defense counsel made a motion for an independent evaluation of the defendant's mental competency. The prosecutor objected to this motion; the trial court sustained the objection.
In his brief to this Court the defendant cites State v. Doze, 384 So.2d 351 (La.1980), and Louisiana Code of Evidence Article 803(3) for the proposition that, because the defendant's state of mind was at issue in determining the voluntariness of the confessions, the school records should have been introduced into evidence at the hearing. However, the Louisiana Code of Evidence was not yet in effect at the time of the defendant's trial. See Act 515 of 1988. Furthermore, State v. Doze, which indicates at 384 So.2d at 353 that declarations of mental state "are generally admissible, as an exception to the hearsay rule, if introduced to prove the state of mind of the declarant, when that state of mind is at issue," has no bearing on the admissibility of the school records contained in Defense Proffer # 1. Furthermore, contrary to defense counsel's assertions, the school records were not admissible under the business records exception to the hearsay rule. There was no showing that the persons who made these records were unavailable to testify. Additionally, there was no showing that these documents were permanent records made in the ordinary course of business from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts. See State v. Monroe, 345 So.2d 1185, 1188 (La.1977). Moreover, these documents were not admissible under the hospital or medical records exception to the hearsay rule, because they obviously did not comply with the requirements of LSA-R.S. 13:3714. See State v. Stevenson, 447 So.2d 1125, 1131 (La.App. 1st Cir.), motion denied, 450 So.2d 951 (La.1984).
Finally, with respect to the allegation of trial court error in denying the defendant's motion for expert testimony, we note that the defendant has not addressed this specific issue in his brief and, therefore, has *786 abandoned it. In any event, we note that defense counsel was not making a motion for a sanity commission, based on the defendant's inability to assist in his defense or a lack of mental capacity to understand the proceedings. See LSA-C.Cr.P. art. 641 et seq. Instead, defense counsel apparently was requesting an independent medical evaluation of the defendant for the purpose of determining whether or not his diminished mental ability affected his confession. We find no error in the trial court's denial of this motion, given the fact that it was made during the hearing on the voluntariness of the defendant's confessions.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. ELEVEN:
In this assignment of error, the defendant contends that the trial court erred in allowing State Exhibit 15, a typed transcript of the defendant's taped confession, to be admitted into evidence. Specifically, he argues that the transcript should not have been introduced into evidence because it was prepared by the State and it was not certified as true and correct.
At the trial, Chief Deputy Willie Johnson testified that State Exhibit 14 was a tape recording of the defendant's confession on April 23, 1987. Chief Deputy Johnson testified that State Exhibit 15 was a typed transcript of the confession prepared at his direction by a typist who was not identified. Although State Exhibit 15 was not certified in any manner, Chief Deputy Johnson testified that he had reviewed the typed transcript and it was a faithful and accurate transcript of the defendant's taped confession.
The trial court overruled the defendant's objections to State Exhibit 15 and allowed each juror to read a copy of the transcript while listening to the tape recording of the defendant's confession. Thereafter, the trial court allowed one copy of the typed transcript to be introduced into evidence as State Exhibit 15. In doing so, the trial court noted that it had followed the typed transcript while listening to the tape recording and had found no discrepancy.
The trial court did not err in allowing the jury to read State Exhibit 15 while listening to the defendant's taped confession. It is well-settled that a transcript of a taped statement is admissible over a best evidence objection because the transcript provides the jury with a convenience in following the playback of the taped confession. State v. Burdgess, 434 So.2d 1062, 1066 (La.1983); State v. Snedecor, 294 So.2d 207, 210 (La.1974). Furthermore, we have examined State Exhibit 15 and find that it is an accurate transcription of the defendant's taped confession. Therefore, the defendant's argument that the transcript was not certified as true and correct is likewise meritless. Finally, we note that the defendant raises a speculative argument about the possibility that State Exhibit 15 was improperly considered by the jury during deliberations. In his brief to this Court, the defendant states, "Did the jury get to read the State prepared transcript during jury deliberation, the record is silent." First, we note that this argument was not assigned as error. In accord with the well-established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988). Furthermore, even if State Exhibit 15 was taken into the jury room during deliberations, defendant failed to enter any objection on this basis at trial. A new basis for an objection cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Burdgess, 434 So.2d at 1067.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. TWELVE:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial. Specifically, the defendant contends that, during cross-examination, Chief Deputy Johnson made a prejudicial response implying that there was evidence of a hearsay nature which was not substantiated by the testimony of any other witness.
*787 During cross-examination, the following colloquy took place:
Q A thirty aught six bolt action rifle recovered from James Boyd Martin, was that gun physically tied to Wade Martin by any physical evidence?
A Just by his statement.
Q By any physical evidence?
A No, sir.
Q So all we have got is the statement of Wade Martin, isn't that correct
A No, sir.
Q that ties him to the crime?
A No, sir.
Q That is not correct. You just testified none of this evidence that your people collected tied him to the crime.
A There were statements made by other people during the investigation that tied him to the crime.
Q People that have testified here today?
A I don't know who has testified.
At this point, both the prosecutor and defense counsel entered objections. The prosecutor objected to this entire line of questioning. Defense counsel objected to the hearsay nature of Chief Deputy Johnson's last remarks and requested a mistrial. Defense counsel argued that these remarks, suggesting that other persons had implicated the defendant in the crime, constituted prejudicial hearsay. The prosecutor responded that defense counsel had asked questions which caused Chief Deputy Johnson to respond as he did. The prosecutor further stated that Chief Deputy Johnson's response was correct. In support of this argument, the prosecutor noted the earlier trial testimony of the defendant's brother, James Martin, who had loaned to the defendant his rifle, the murder weapon, before the shooting and subsequently helped the defendant bury the rifle after the shooting. Thereafter, the trial court denied the defendant's motion for a mistrial.
Mistrial is a drastic remedy; except in instances in which a mistrial is mandatory, it is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. In ruling on a motion for a mistrial, the trial court has the sound discretion to determine whether the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. State v. Young, 576 So.2d 1048, 1058 (La.App. 1st Cir.), writ denied, 584 So.2d 679 (La.1991).
Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than a testifying witness and offered as proof of the truth of the statement's content. State v. Valentine, 464 So.2d 1091, 1093 (La.App. 1st Cir.), writ denied, 468 So.2d 572 (La.1985).
Defense counsel's line of questioning clearly suggested that, apart from the defendant's confession, there was no evidence to link him with the murder. Chief Deputy Johnson disagreed, noting that others had made statements implicating the defendant. Initially, we note that Chief Deputy Johnson was entitled to respond to defense counsel's line of questioning and that his answers certainly were responsive. Furthermore, we note that, based on the definition cited above, Chief Deputy Johnson's response, which was general in nature, did not constitute hearsay because he did not actually repeat an out-of-court statement made by another person. Therefore, the trial court did not err in denying the defendant's motion for a mistrial. Moreover, even if Chief Deputy Johnson's testimony was improper in the sense that it indirectly referred to hearsay statements made by unidentified persons who implicated the defendant in the crime, any such error was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt. LSA-C.Cr.P. art. 921.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. THIRTEEN AND FOURTEEN:
Both of these assignments of error relate to allegations of ineffective assistance of trial counsel. In assignment of error number thirteen, the defendant contends that he was prejudiced because the three attorneys who represented him at trial rendered *788 ineffective assistance. In assignment of error number fourteen, the defendant requests this Court to review the record for errors patent in relation to the ineffective assistance of counsel.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Teeter, 504 So.2d 1036, 1039-1040 (La.App. 1st Cir. 1987).
The defendant contends that his trial attorneys were ineffective because they failed to file certain pretrial motions, failed to prepare and/or investigate, chose a plea of not guilty instead of not guilty and not guilty by reason of insanity, failed to call certain witnesses at the trial, and because they had a conflict of interest with the defendant. The choice between a plea of not guilty or not guilty and not guilty by reason of insanity, as well as the decision of whether or not to call certain witnesses at the trial, obviously relates to strategy decisions and could not possibly be reviewed on appeal. Likewise, without an evidentiary hearing, it would be impossible to conclude whether or not additional pretrial motions could or should have been filed by the defendant's trial attorneys or if further trial preparation and investigation were required.
Finally, a conflict of interest allegedly arose when a member of the victim's family approached the defense attorneys during the trial and asked them to do legal work for her. We note that in support of this allegation the defendant has attached to his brief to this Court (as Exhibits 1 and 2) two affidavits indicating that Mrs. T.H. Davidge approached the defense attorneys during the trial and discussed the possibility of their doing some legal work for her. Initially, we note that there is nothing in the record upon which to base our review of this allegation of a conflict of interest. Although the defendant has attached to his brief the two affidavits labeled "Exhibits 1 and 2," this Court has no authority to receive or review evidence not contained in the trial court record. State v. Swan, 544 So.2d 1204, 1209 (La.App. 1st Cir.1989). Furthermore, even if we could consider Exhibits 1 and 2, the allegations contained therein also would require an evidentiary hearing to determine whether a conflict of interest actually existed.
As noted above, in assignment of error number fourteen, the defendant has assigned as error all errors patent on the face of the record in relation to the issue of ineffective assistance of counsel. An assignment of error requesting patent error review is unnecessary, as this Court routinely reviews the record for errors patent, whether or not such a request is made by a defendant. See LSA-C.Cr.P. art. 920(2). Nevertheless, the defendant's request for patent error review specifically relates to his allegation of ineffective assistance of counsel. However, the defendant has not cited any specific patent errors, nor has he explained how a review for errors patent on the face of the record could possibly support an allegation of ineffective assistance of counsel. In any event, we have reviewed the record in these proceedings and have found no reversible patent errors. However, we have discovered a patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. LSA-C.Cr.P. art. 880. Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See LSA-C.Cr.P. art. 882(A). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute *789 entry of the sentence to reflect that the defendant is given credit for time served.
For the reasons set forth herein we remand this case to the district court to amend the commitment and minute entry as indicated, and the conviction and sentence, as amended, are affirmed.
CONVICTION AND SENTENCE AFFIRMED AS AMENDED; REMAND WITH ORDER.
NOTES
[1] The defendant and Mrs. Davidge were tried separately. Mrs. Davidge was convicted of the responsive offenses of conspiracy to commit manslaughter and manslaughter. Her convictions and sentences were affirmed by this court in an unpublished opinion. State v. Davidge, 599 So.2d 527 (La.App. 1st Cir.1992). The instant record gives no indication as to the status or disposition of the charges against Ms. Mowers.
[2] LSA-R.S. 15:435, which was in effect at the time of the instant trial, was repealed by the new Code of Evidence, which became effective on January 1, 1989. See Act 515 § 8 of 1988.