434 So.2d 1062 (1983)
STATE of Louisiana
v.
James W. BURDGESS.
No. 82-KA-1476.
Supreme Court of Louisiana.
June 27, 1983.
*1063 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., R. Gregg Fowler, Earl Humphries, Asst. Dist. Attys., for plaintiff-appellee.
W.T. Armitage, Jr., Alexandria, for defendant-appellant.
DENNIS, Justice.
The defendant was convicted of first degree murder and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. La.R.S. 14:30. On appeal to this court, he presents five arguments for the reversal of his conviction. We find that these arguments have no merit, and we therefore affirm his conviction and sentence.
On March 8, 1979 Mrs. Bobbie Kimball returned to her home outside of Pineville, Louisiana and found the body of her husband, Guy, stretched out on the living room floor in a pool of blood. There were signs that the house had been ransacked after a forced entry. The coroner determined the cause of death to be gunshot wounds to the head.
The confession of James Burdgess was presented to the jury at the trial. Burdgess stated that he and Dennis Nall had agreed to kill Guy Kimball. Nall, a severed co-defendant, was having an affair with Bobbie Kimball. Burdgess stated that he and Nall had discussed the matter with Bobbie, and that she and Nall told him that he was to receive $10,000 and a truck for his participation in the crime. Burdgess stated that he and Nall had broken into the Kimball home, ransacked the house so that it would appear that it had been burglarized, and lay in wait for Guy Kimball. When Kimball arrived, Burdgess and Nall shot him *1064 through the head, the former with a large caliber revolver taken from Kimball's nightstand, and the latter with a small caliber handgun taken from the Kimballs' gun closet.
At trial, the defendant contended that his confession was false. He claimed that he had confessed to the crime only because he believed Nall had given a statement to the police which placed the primary blame for the crime on him, and that his confession was merely an attempt to save himself by getting a favorable plea bargain.
Elements of Burdgess' confession were corroborated by the other evidence at the trial. Bobbie Kimball testified that she had spoken to Nall and Burdgess about the murder of her husband and that, at what she thought was Burdgess' request, she had wiped her house clean of fingerprints before she left on March 7. She testified that she had received $10,000 in insurance proceeds for the death of her husband, and that she pleaded guilty to conspiracy to commit first degree murder. She also testified that when she returned home on March 8, she expected to find her husband dead because she had received a phone call to that effect from Nall.
Ballistics experts linked a gun given to the police by the defendant's girlfriend as the large caliber revolver which fired one of the fatal shots into Guy Kimball's head. Also surrendered to the police were several eight track tapes. Burdgess stated in his confession that he had given this gun and the tapes to his girlfriend for her birthday. Bobbie Kimball positively identified the gun as the one which her husband kept in his nightstand, and the tapes as her own.

ASSIGNMENTS NUMBERS ONE AND THREE
In assignment number one the defendant complains of the denial of the motion to suppress his confession. The defendant contends that his statement was given as a direct result of a statement given by Dennis Nall on April 30, 1979. Since that statement was found to be involuntary and suppressed by this court, State v. Nall, 379 So.2d 731 (La.1980), the defendant contends that his statement was "fruit of the poison tree" and therefore not admissible.
In assignment number three the defendant complains of the denial of his objection to the testimony of his former attorney at the hearing on the motion to suppress. The attorney was subpoenaed by the state, and his testimony was elicited to prove that the statement given by the defendant was not the result of the April 30 statement of Dennis Nall. The defendant objected to the testimony on the ground that it violated his attorney-client privilege. La.R.S. 15:475, 478.
A detailed consideration of these assignments is unnecessary because the defendant has no standing to assert the involuntary nature of Dennis Nall's April 30 statement. A person adversely affected by a confession unlawfully obtained from another has no standing to raise its illegality in court. This principle has been applied where, as in this case, one co-defendant or co-conspirator seeks to suppress evidence incriminating him that was obtained from a coparticipant in crime without proper compliance with the procedural requirements of Miranda or otherwise in violation of that party's Fifth or Sixth Amendment rights.[1]United States v. Fredericks, 586 F.2d 470 (5th Cir.1978). See Gissendanner v. Wainwright, 482 F.2d 1293, 1296-97 (5th Cir. 1973); United States v. Pruitt, 464 F.2d 494, 495 (9th Cir.1972); United States v. Schennault, 429 F.2d 852, 855 (7th Cir.1970); United States v. Bruton, 416 F.2d 310, 312-13 (8th Cir.1969), cert. denied, 397 U.S. 1014, *1065 90 S.Ct. 1248, 25 L.Ed.2d 428 (1970). See also McKenney v. State, 388 So.2d 1232 (Fla.1980); People v. Varnum, 66 Cal.2d 808, 59 Cal.Rptr. 108, 427 P.2d 772 (1967), cert. denied, 390 U.S. 529, 88 S.Ct. 1208, 20 L.Ed.2d 86 (1968). The failure of the 1974 Louisiana constitution to provide for such standing, while explicitly granting any person adversely affected by a search or seizure conducted in violation of the constitution standing to raise its illegality in the appropriate court, indicates that the framers did not consider that the additional benefit of extending the exclusionary rule to persons adversely affected by others' involuntary confessions would justify further encroachment upon the public interest in having criminal cases decided on the basis of relevant evidence. Compare La. Const. art. 1 § 5 with art. 1 § 16.
While we find that the defendant has no standing in this case to object to the nonvoluntary nature of his co-defendant's confession, we reserve judgment on the question of whether gross police misconduct against third parties in the overly zealous pursuit of criminal convictions might lead to limited standing. See United States v. Fredericks, supra, 586 F.2d at 481 and the cases cited at note 14. In this case, however, the conduct of the police in the taking of Nall's statement is far from the sort of third-degree physical or psychological coercion that might prompt us to exclude the defendant's confession.
This assignment of error, therefore, lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment the defendant alleges as error the failure of the trial judge to grant a mistrial when the prosecutor referred to the statement made by Nall. During his examination of one of the police officers, the prosecutor asked whether a second statement had been taken from Dennis Nall on April 30. Defense counsel objected before the question was answered. Out of the presence of the jury, the defendant's attorney argued that a mistrial should be granted because reference was made to an inadmissible confession. The judge denied the motion and said that he would instruct the jury to disregard unanswered questions and not to draw any inference from them.
Louisiana Code of Criminal Procedure article 770 provides in part that:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion color or national original, if the mark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
In other situations where prejudicial remarks are made before the jury, the trial judge may use his discretion to admonish the jury to disregard the remark rather than grant a mistrial. La.Code Crim.P. art. 771. Since mistrial is such a drastic remedy, unless mandated by article 770, it should only be used in those situations which might result in substantial prejudice to the defendant. State v. Smith, 430 So.2d 31; State v. Tribbet, 415 So.2d 182 (La.1982); State v. Belgard, 410 So.2d 720 (La.1982).
In the situation at hand, the trial judge did not abuse his discretion in denying the motion for a mistrial and in admonishing the jury with an instruction regarding impermissible inferences from unanswered questions. The defendant objected before the question was answered, so any possible prejudice could only stem from an inference that Dennis Nall made a statement that in some way implicated the defendant. However, the jury was fully aware that Nall spoke to the police, since at two other points in the trial references were made to Nall and his statement: during the examination of Deputy Caughlin, *1066 the witness stated that he had talked with Nall on April 30; and during the cross-examination of the defendant, the prosecutor questioned the defendant about his prior testimony at the hearing on the motion to suppress, which contained references to Nall's April 30 statement. Under these circumstances, an instruction to the jury was sufficient to cure any prejudice which may have resulted from the unanswered question.

ASSIGNMENT NUMBER FIVE
In this assignment of error, the defendant argues that the trial judge improperly admitted into evidence a black and white videotape made by the police during their investigation of the crime scene. The tape showed the interior of the victim's home and its condition, the body of the victim, and evidence found throughout the house. The defendant objected to the tape on the grounds that it was repetitious and inflammatory since still photographs of the crime scene had already been introduced. The state countered this argument by laying a predicate through the testimony of one of the investigating officers. The witness stated that certain physical evidence was depicted in the video tape that was not shown in the photographs: bullet fragments, and valuables left in the house inconsistent with the hypothesis that the crime was perpetrated by burglars. The judge admitted the tape, but later excluded additional photographs. The defendant contends that the state manipulated the order of the introduction of its evidence by holding back on the second group of photographs so that the video tape would be found admissible.
Photographs which illustrate any fact, shed light upon any factor at issue in the case, or reliably describe the person, place or thing depicted are admissible, provided that their probative value outweighs any prejudicial effect. State v. Lindsey, 404 So.2d 466 (La.1981). The same rule applies for the introduction of videotape. See State v. Garrison, 400 So.2d 874 (La. 1981).
We find that the videotape was properly admitted. The tape was of significant probative value since it revealed admissible evidence not revealed by the still photographs. The prejudicial effect of the tape was slight since the jury had previously viewed still photographs which graphically illustrated the victim's body lying in a pool of dried blood. In State v. Vernon, we held that photographs of the bloated, beaten and burned body of the victim were distasteful and unpleasant but were not so gruesome as to inflame the jury. 385 So.2d 200, 204 (La.1980). We cannot say that the videotaped depiction of the victim's body was more prejudicial that the view revealed by the photographs in Vernon. We do not find the state's attempt to introduce additional photographs reprehensible, since these photographs merely showed the location of certain bullets and did not duplicate the facts illustrated by the video tape.
While the better course in this case would perhaps have been a prescreening of the videotape by the trial judge, with editing to delete the duplicative material already in evidence through the still photographs, we cannot say that in this case, with the significant quantity of physical evidence linked to the defendant as well as his confession, the judge committed reversible error.

ASSIGNMENT OF ERROR NUMBER SIX
In this assignment the defendant contends that the trial judge erred in allowing the state to present to the jurors printed transcripts of his statement to use while an audiotape of the confession was played. The state contended that the transcripts were necessary since parts of the confession were very difficult to hear on the tape.
This issue was decided by us in State v. Snedecor, 294 So.2d 207, 210 (La. 1974). There we held that a transcript of a tape was admissible over a best evidence objection, since the transcript provided the jury with a convenience in following the playback of the tape. See also State v. Roche, 341 So.2d 348 (La.1976).
The defendant seeks to distinguish Snedecor by arguing on appeal that a transcript *1067 should not be admitted in a case where the truth of the confession is disputed since the transcript may lend credence to the material on the tape. We do not reach this issue since the only objection raised before the trial judge was that the transcript was repetitive. It is well settled that a new basis for an objection may not be raised for the first time on appeal. La.Code Cr.P. art. 841; State v. Clayton, 427 So.2d 827 (La.1983); State v. Sims, 426 So.2d 148 (La.1983); State v. Webb, 419 So.2d 436 (La.1982); State v. Herrod, 412 So.2d 564 (La.1982).
This assignment of error lacks merit.

DECREE
Having found no merit in any of the defendant's assigned errors, his conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Similarly, at trial, a defendant can neither assert the Fifth Amendment right against self-incrimination on behalf of a witness, nor, if the witness himself asserts his privilege, take advantage of an error in the court in overruling it. United States v. Fredericks, supra, 586 F.2d at 481. See United States v. Colyer, 571 F.2d 941, 945 (5th Cir.1978); Hall v. United States, 413 F.2d 45, 48 (5th Cir.1969); United States v. Skolek, 350 F.2d 913, 915-16 (9th Cir.1965), cert. denied, Bowman v. U.S., 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966). In the instant case, the state attempted to elicit Nall's testimony. However, Nall asserted the privilege against self-incrimination on his own behalf.