672 So.2d 361 (1996)
STATE of Louisiana
v.
Doyle BILLIOT.
No. 94KA2419.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*364 Stephen E. Caillouet, Thibodaux, for State.
Karl E. Lewis, Jr., Houma, for defendant-appellant Doyle Billiot.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
*365 LOTTINGER, Chief Judge.
The defendant, Doyle Billiot, was charged by grand jury indictment with second degree murder. La.R.S. 14:30.1. He pleaded not guilty and, after trial by jury, a unanimous jury found him guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served.[1] He has appealed, alleging seventeen assignments of error, as follows:
1. The trial court erred in finding that the defendant had the necessary mental capacity to proceed to trial.
2. The trial court erred in failing to suppress the defendant's confessions to sheriff's deputies in Plaquemines Parish.
3. The trial court erred in failing to suppress the defendant's confession to sheriff's deputies in Lafourche Parish.
4. The trial court erred in allowing State Exhibit 1 to be introduced into evidence over the defendant's objection.
5. The trial court erred in allowing a photograph of the victim's body to be introduced into evidence over the defendant's objection.
6. The trial court erred in overruling the defendant's objection to the testimony of Wayne Seiffert, Sr., regarding the amount of broken glass from the driver's side window of the victim's car.
7. The trial court erred in overruling the defendant's objection to the testimony of Wayne Seiffert, Sr., regarding the description of the victim's wounds.
8. The trial court erred in overruling the defendant's objection to the testimony of Wayne Seiffert, Sr., regarding his opinion testimony that the discolorations on the victim's head were gunpowder burns.
9. The trial court erred in allowing the jury to read typed transcripts of the defendant's taped confessions while the tape recordings of the confessions were being played.
10. The trial court erred in overruling the defendant's best evidence objection to photocopies of State Exhibit 7.
11. The trial court erred in overruling the defendant's objection to the opinion testimony of Dr. Susan Garcia.
12. The trial court erred in overruling the defendant's objection to the admissibility of State Exhibit 7.
13. The trial court erred in overruling the defendant's objection that the redirect examination of James Bridges was beyond the scope of cross-examination.
14. The trial court erred in overruling the defendant's objection to the testimony of Julia Hallmark describing the defendant's head wounds.
15. The trial court erred in restricting the defendant's cross-examination of Charles Bowles regarding his qualifications to take the defendant's statements.
16. The trial court erred in overruling the defendant's objections to the qualifications of State expert witness Sherry Pool Gutierrez.
17. The trial court erred in denying the defendant's motion for post-verdict judgment of acquittal.

FACTS
At approximately 2:30-3:00 a.m. on April 3, 1993, the defendant shot and killed the victim, Tracy Lynn Michel. The shooting occurred inside the victim's car, which was parked outside the defendant's trailer on East 36th Street in Cut Off, Louisiana. The following facts were revealed at the trial. The defendant and the victim had dated for about nine months, including approximately two months during their relationship in which they lived together at the home of the victim's mother, Elaine Cheramie. Although the victim broke up with the defendant about *366 five weeks prior to the shooting, she apparently wished for them to remain friends.
On the night of April 2, the victim attended a bonfire celebration for her birthday and, later that evening, she went out to Hots Lounge. The defendant also was at Hots and, when the bar closed at 2:00 a.m., she gave the defendant a ride to his trailer. While the victim remained in her car, the defendant went into his trailer to retrieve the victim's cigarette lighter. He returned to the car with the lighter and his gun, a .25 automatic. The defendant sat in the front passenger seat and talked with the victim. At some point, he produced the gun and shot the victim three times. Two bullets entered the right side of the victim's head and the third grazed her nose. The defendant then shot himself in the top of the head three times, got out of the car, and threw the gun in a canal. He returned to the car, pushed the victim's body into the passenger seat, and drove to Port Sulphur, Louisiana, where he ran out of gas and abandoned the car. He crossed the levee and hid in the marsh.
Meanwhile, the victim's body was discovered; and law enforcement officers in Plaquemines Parish and Lafourche Parish began searching for the defendant after it was discovered that the victim was last seen alive with him. The defendant was apprehended in Port Sulphur around noon on April 4. After being treated for three superficial gunshot wounds to the head at Plaquemines Parish Comprehensive Care Center, the defendant was taken to the Sheriff's Office, where he initially gave a taped statement indicating that an unknown assailant had shot both him and the victim. After eating lunch, the defendant was asked by Chief Detective Charles Bowles of the Plaquemines Parish Sheriff's Department if the first statement was the one he wanted to give, whereupon the defendant began crying and indicated that he wanted to tell the truth. Immediately thereafter, the defendant gave a second taped statement wherein he confessed to shooting the victim before shooting himself. He explained that he shot the victim and then shot himself because she "was always messing with my head she, she kept coming back to me and she did, she didn't know what she wanted ..." The defendant was returned to Lafourche Parish in the early morning of April 5. Shortly after his return, he gave a lengthy, detailed taped confession to detectives at the Lafourche Parish Detention Center. While in jail awaiting trial, the defendant admitted shooting the victim to his former girlfriend, Therese Gisclair, and her mother, Tresa Gisclair, during their visit with him at the jail. He also wrote a letter (State Exhibit 7) from jail to this former girlfriend in which he referred to himself as a murderer.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant contends that the trial court erred in finding that he had the mental capacity to proceed to trial.
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La.Code Crim.P. art. 641. The law presumes the defendant's sanity. La.R.S. 15:432. The defendant bears the burden of proving by a preponderance of the evidence that, as a result of his mental infirmity, he is incompetent to stand trial. State v. Rogers, 419 So.2d 840, 843 (La.1982).
On April 7, 1993, the defense requested the appointment of a Sanity Commission. The trial court granted the motion and appointed two doctors, Coleridge T. Franklin, Jr., and Michael W. Cooper. Both doctors examined the defendant and filed reports. In his report, Dr. Franklin concluded that the defendant understood his situation and was able to assist in his defense. He was not able to detect any "organized psychosis or delusion." However, Dr. Cooper reached a different conclusion. In his report, while he indicated that the defendant had enough intelligence to proceed, Dr. Cooper concluded that the defendant needed "acute psychiatric attention because of his depression." Dr. Cooper stated: "There is some doubt in my mind as to rather (sic) he has the mental capacity to assist his lawyer in his defense, understand the implications of the charges brought *367 against him and actively participate in his defense."
Because of this disagreement between the two doctors, the defense requested the appointment of another doctor to give a third opinion as to the defendant's mental capacity. The trial court granted this motion and appointed Thomas A. Moore to the Sanity Commission. In his report, Dr. Moore found "no evidence of hallucinations or delusions to suggest psychotic processes." He concluded that the defendant was capable of understanding the charges against him, aiding his attorney, and proceeding to trial.
The hearing on the defendant's mental capacity to proceed took place on October 11, 1993. No testimony was introduced; instead, the matter was submitted on the doctors' reports. The trial court stated that it had reviewed the reports and concluded that the defendant was capable of proceeding.
While a court is permitted to receive the aid of expert medical testimony on the issue of a defendant's mental capacity to proceed, the ultimate decision of competency is the court's alone. La.Code Crim.P. art. 647; State v. Pravata, 522 So.2d 606, 610 (La.App. 1st Cir.), writ denied, 531 So.2d 261 (La.1988). The ruling of the district court on a defendant's mental capacity to proceed is entitled to great weight on appellate review and will not be overturned absent an abuse of discretion. State v. Dorsey, 447 So.2d 636, 638 (La.App. 1st Cir.1984).
After reviewing the reports introduced into evidence at the sanity hearing, we find no abuse of discretion in the trial court's determination that the defendant had the necessary mental capacity to understand the proceedings against him and to assist in his defense. Clearly, the defendant failed to prove by a preponderance of the evidence that he lacked the capacity to understand the proceedings against him or to assist in his defense.
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
In these assignments of error, the defendant contends that the trial court erred in denying his motion to suppress his tape recorded confessions. Specifically, the defendant contends that the State failed to prove he freely and voluntarily confessed. He does not contest the circumstances of his arrest or deny that his taped statements were made after an advice of Miranda rights. Instead, the defendant alleges misconduct by Chief Detective Bowles. Specifically, the defendant contends that, while they were alone together eating lunch after the first taped statement (wherein the defendant stated that an unknown assailant had shot both he and the victim), Chief Bowles suddenly began cursing and screaming at him and threatened to release him to the victim's family if he did not confess to shooting the victim. As a result of this alleged threat, the defendant gave a second taped statement to the detectives in Plaquemines Parish in which he confessed to shooting the victim and himself, as well as a subsequent taped confession to detectives in Lafourche Parish. The defendant further argues that his confessions were involuntary due to the combined effects of his head wounds and a lack of sleep.
Accordingly, the primary issue presented herein is whether or not the trial court erred in its determination that the testimony of the State's witnesses specifically rebutting the defendant's allegation of threats by Chief Bowles was credible. The other remaining issue is whether or not the defendant's head wounds and alleged lack of sleep rendered his confessions involuntary.
Both the State and the defense presented evidence at the motion to suppress hearing on the issue of the voluntariness of the defendant's confessions. At the conclusion of this hearing, the trial court ruled that the confessions were voluntarily given after waivers of Miranda rights and, therefore, were admissible at the trial.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises. La.R.S. 15:451. The State must specifically rebut a defendant's specific allegations *368 of police misconduct in eliciting a confession. State v. Thomas, 461 So.2d 1253, 1256 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1375 (La.1985). Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. King, 563 So.2d 449, 453 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. See State v. Patterson, 572 So.2d 1144, 1150 (La.App. 1st Cir.1990), writ denied, 577 So.2d 11 (La.1991); State v. Sanford, 569 So.2d 147, 150 (La.App. 1st Cir. 1990), writ denied, 623 So.2d 1299 (La.1993). Whether or not a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La.1983). The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1st Cir.1983).
At the first day of the motion to suppress hearing (February 16, 1994), the three Plaquemines Parish Sheriff's detectives (Chief Bowles, James Bridges, and Charles Guey) testified that they were present when the defendant waived his Miranda rights and gave two taped statements, including the second statement wherein the defendant confessed to the murder. All three detectives testified that no promises, inducements, or threats were made prior to the taped statements. The defendant was advised of his Miranda rights and signed a Miranda rights waiver form which was admitted into evidence as State Exhibit 1. According to the detectives, the defendant did not appear to be tired, sleepy, or in pain.
At the second day of the motion to suppress hearing (March 10, 1994), two Lafourche Parish Sheriff's detectives (Robert Dill and Douglas Foremen) testified that they were present when the defendant waived his Miranda rights and gave a detailed, taped confession to the murder. These detectives also testified that no promises, inducements, or threats were made prior to the taped statement. The defendant was advised of his Miranda rights and signed a Miranda rights waiver form which was admitted into evidence as State Exhibit 3. According to the detectives, the defendant appeared alert and did not complain of any pain.
The defendant testified as the only defense witness. According to the defendant, after the first statement, he and Chief Bowles were alone in a room when Chief Bowles began screaming and cursing at him. Chief Bowles allegedly stated that he did not believe the defendant's first statement and that the victim's family was outside and wanted to kill him. Chief Bowles further stated that, if the defendant did not confess to the murder, he would release the defendant to the victim's family and let them kill him. As a result of this threat, the defendant gave a second statement in which he admitted killing the victim. The defendant further explained that, prior to the confession in Lafourche Parish, he was weak because he had lost a lot of blood and his legs would tremble when he stood. He indicated that he gave a confession to the murder in Lafourche Parish because Chief Bowles told him to do so.
At the final day of the motion to suppress hearing (March 11, 1994), the three Plaquemines Parish Sheriff's detectives (Chief Bowles, James Bridges, and Charles Guey) were recalled on rebuttal. They specifically denied the defendant's allegation of a threat by Chief Bowles to release the defendant to the victim's family.
In its ruling denying the motion to suppress, the trial court found that the defendant had the mental capacity to understand and waive his Miranda rights. The court noted that the testimony of the State's witnesses, as well as the confessions themselves, indicated the defendant was able to comprehend what was happening. Focusing upon the defendant's responses during his confessions, the trial court rejected outright the argument that the defendant was physically *369 or mentally exhausted, or otherwise prevented from understanding the consequences of what he was doing because of his head wounds, pain, sleep deprivation, or any other reason. The trial court further stated that it rejected the defendant's testimony regarding a threat by Chief Bowles. The court accepted as credible the testimony of the state's witnesses and determined that the defendant voluntarily gave the second taped statement in Plaquemines Parish after having "second thoughts on his own".
After considering the entire record,[2] especially the tape recordings of the defendant's confessions, we agree with the trial court's ruling denying the motion to suppress. During these confessions, the defendant related specific details which occurred before, during, and after the murder. His responses to questions asked by the detectives about waiving his Miranda rights and about the details of the crime were fairly coherent and direct. Furthermore, we find no abuse of discretion in the trial court's credibility determination in which it accepted the testimony of the State's witnesses and specifically rejected the defendant's testimony of a threat by Chief Bowles. Accordingly, the defendant's taped confessions were properly admitted at the trial.
These assignments of error are meritless.

ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE
These assignments of error relate to the introduction into evidence of two particular photographs of the victim. In assignment of error number four, the defendant contends that the trial court erred in allowing State Exhibit 1 (a framed photograph of the victim prior to her death) to be introduced into evidence over his objection. In assignment of error number five, the defendant contends that the trial court erred in allowing a photograph of the victim's dead body inside her car (one of the photographs in State Exhibit 10 in globo) to be introduced into evidence over his objection.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible, provided their probative value outweighs any prejudicial effect. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). Post-mortem photographs of murder victims are admissible to prove corpus delecti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. The admission of allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Hosford, 572 So.2d 242, 245 (La.App. 1st Cir.1990), writ denied, 576 So.2d 27 (La.1991).
After the trial, State Exhibit 1 was returned to the victim's mother. Although a photocopy of this exhibit allegedly was substituted for the original, this copy was not forwarded to this Court with the other trial exhibits; and the Lafourche Parish Clerk's Office was unable to locate the copy. Pursuant to an order of this Court dated January 25, 1996, the instant record was supplemented with a color copy of State Exhibit 1. We have viewed this copy of the exhibit and find no error in the admission into evidence of the original. State Exhibit 1 was admissible to provide positive identification of the victim. See State v. Caston, 26-415, p. 14 (La.App. 2 Cir. 10/26/94); 645 So.2d 1202, 1210-1211, writ denied, 94-3137 (La. 5/5/95); 654 So.2d 337.
State Exhibit 10 in globo consists of 41 photographs, which depict the victim's body from various angles and distances, as well as the interior and exterior of her car. Although we have reviewed the trial transcript and all 41 photographs contained in State Exhibit 10 in globo, we are unable to identify the particular photograph alleged by the defendant to be too gruesome. Defense counsel's objection did not identify a particular *370 photograph by number. Nevertheless, after reviewing all of the photographs in State Exhibit 10 in globo which depict some or all of the victim's body (approximately 12 photographs), we find that the probative value of each photograph far outweighs any prejudicial effect. While a few of these photographs focus closely on the victim's body, contrary to the defendant's argument, they cannot be characterized as inflammatory or gruesome.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER SIX
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the testimony Sgt. Wayne Seiffert, Sr., of the Plaquemines Parish Sheriff's Department, regarding the amount of broken glass from the driver's side window of the victim's car. The defendant contends that, because Sgt. Seiffert was not qualified as an expert witness in accident reconstruction, the trial court erred in allowing his opinion testimony in this matter.
Although Sgt. Seiffert was not testifying as an expert witness, he did state that he was the crime scene and accident investigator for the Plaquemines Parish Sheriff's Department. Thereafter, when the prosecutor asked him if there was a sufficient amount of glass inside the vehicle to form the driver's side window, defense counsel objected that the witness was not competent to give such testimony. The prosecutor responded that the question did not call for an expert opinion. The trial court overruled the objection and stated that Sgt. Seiffert could answer the question, whereupon he stated that the amount of glass he observed both inside and outside the vehicle did not appear to be the total amount of glass forming the driver's side window.
Obviously, the prosecutor's question did not seek an expert opinion. Instead, Sgt. Seiffert was allowed to give opinion testimony which was rationally based on his crime scene observations. See La.Code Evid. art. 701(1).
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS SEVEN AND EIGHT
These assignments of error also relate to the testimony of Sgt. Seiffert. The defendant contends that the trial court erred in overruling his objections to Sgt. Seiffert's testimony describing the victim's wounds and characterizing the wounds as containing gunpowder burns.
Contrary to the defendant's assertion in brief, the prosecutor's question asking Sgt. Seiffert to describe the victim's wounds did not seek an expert opinion. Instead, Sgt. Seiffert was allowed to give opinion testimony which was rationally based on his crime scene observations. See La.Code Evid. art. 701(1). Specifically, he stated that the victim's wounds contained dark colorations and blackened areas. Clearly, the trial court correctly overruled defense counsel's objection to this testimony.
When the prosecutor asked Sgt. Seiffert to explain the significance of the dark colorations and blackened areas, defense counsel again objected. After entertaining argument on the objection, the trial court ruled that Sgt. Seiffert could testify that the victim's wounds contained gunpowder burns if the proper foundation was established, to which ruling defense counsel did not object. After the prosecutor explored Sgt. Seiffert's crime scene investigation experience and training in the field of gunshot wounds, he testified without further objection that the victim's wounds contained gunpowder burns. Even assuming, arguendo, that the trial court erred in overruling the defendant's objection to Sgt. Seiffert's testimony that the victim's wounds contained gunpowder burns, we find that any such error did not affect any substantial rights of the defendant and, therefore, was harmless beyond a reasonable doubt in light of the subsequent, detailed testimony about the victim's wounds given by the forensic pathologist, Dr. Susan Garcia. See La.Code Evid. art. 103 A; La. Code Crim.P. art. 921.
These assignments of error are meritless.

*371 ASSIGNMENTS OF ERROR NUMBERS NINE AND TEN
In assignment of error number nine, the defendant contends that the trial court erred in allowing the jury to read typed transcripts of the defendant's taped confessions while the tape recordings of the confessions were being played. In assignment of error number ten, the defendant contends that the trial court erred in allowing the jury to read photocopies of State Exhibit 7 (a letter written by the defendant to his former girlfriend) while the letter was read to them by a witness.
The trial court did not err in allowing the jury to read typed transcripts while listening to the defendant's taped confessions. Defense counsel admitted that he did not contest the accuracy of the typed transcripts. It is well-settled that a transcript of a taped statement is admissible over a best evidence objection since the transcript provides the jury with a convenience in following the playback of the taped confession. State v. Burdgess, 434 So.2d 1062, 1066 (La. 1983); State v. Snedecor, 294 So.2d 207, 210 (La.1974).
The defendant argues that the letter itself (State Exhibit 7) was the best evidence of its contents and, therefore, the trial court erred in overruling his objection to the photocopies. However, following the adoption of the Code of Evidence, the broad "best evidence" rule of exclusion of evidence (former La.R.S. 15:436) no longer exists. State v. Francis, 597 So.2d 55, 59 (La.App. 1st Cir. 1992). Furthermore, even under the former "best evidence" rule jurisprudence, admission of a mechanical reproduction of an original document was reversible error only if the content of the copy did not accurately reflect that of the original. State v. Square, 433 So.2d 104, 108 (La.1983). Moreover, these photocopies were not admitted into evidence; instead, like the typed transcripts of the defendant's confessions, these copies of State Exhibit 7 were provided to the jury as a convenience in following the reading of the letter by the witness. See State v. Burdgess, 434 So.2d at 1066; State v. Snedecor, 294 So.2d at 210.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER ELEVEN
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the opinion testimony of Dr. Susan Garcia. Specifically, he contends that Dr. Garcia's testimony regarding the distance from which the gun was fired exceeded the scope of her expertise. We disagree.
Dr. Garcia was accepted by the trial court (without objection by the defense) as an expert in forensic pathology. During the prosecutor's questioning regarding the foundation for her expertise, Dr. Garcia responded that the determination, within a certain range, of the distance between the gun and the body was part of the specialty of forensic pathology. Dr. Garcia also testified that she had performed between 1400 and 1500 autopsies, including "[h]undreds" of autopsies on gunshot victims. Over the defendant's objection, Dr. Garcia testified that, in her opinion, the gun was at "close range to very close intermediate range" (less than three inches).
Considering Dr. Garcia's qualification by the trial court as an expert in forensic pathology and her experience in this area, we find that the trial court correctly overruled the objection herein. Dr. Garcia was qualified to give an expert opinion as to the distance from which the gun was fired. See State v. Moran, 495 So.2d 338, 340 (La.App. 4th Cir. 1986).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWELVE
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the admissibility of State Exhibit 7. Specifically, he contends that the letter was irrelevant or, if somehow relevant, it should have been excluded because it confused the issues or misled the jury. See La.Code Evid. arts. 401-403.
*372 State Exhibit 7 (a letter written by the defendant to his former girlfriend) contained the following remark: "how does it feel to be (here a line was drawn through the words "going out") in love with a murderer ha ha." The State argued that the letter was admissible and was not hearsay because of this inculpatory statement. Defense counsel asserted that the defendant obviously was jesting, as evidenced by the words "ha ha." The trial court overruled the objection and allowed the letter to be introduced into evidence, specifically ruling that "the parenthetical laughter in the letter would go to the weight rather than the admissibility."
Contrary to the defendant's argument, any statement by the defendant referring to himself as a "murderer" would be relevant evidence and the probative value of such evidence would far outweigh any possible prejudice. Furthermore, as an admission by the defendant, such a statement was admissible under La.Code Evid. art. 801 D(2)(a). Finally, we note that the trial court correctly ruled that the suggestion the defendant was jesting in the letter went to the weight of the evidence rather than its admissibility.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THIRTEEN
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the redirect examination of Detective Bridges. Specifically, he argues that the prosecutor's question was beyond the scope of cross-examination and that the trial court failed to allow recross-examination.
Redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial court, provided that the opportunity be not denied to recross on the new matter brought out on redirect. See La.Code Evid. art. 611 D; State v. Hawkins, 572 So.2d 108, 115 (La.App. 1st Cir.1990).
In the instant case, Detective Bridges was questioned, on direct and cross-examination, regarding the two taped statements made by the defendant in Plaquemines Parish. On redirect, when the prosecutor asked a question about the time period, defense counsel objected that the question was beyond the scope of his cross-examination. The trial court overruled the objection. After reviewing defense counsel's cross-examination of Detective Bridges, we find no error in the trial court's ruling. During cross-examination, defense counsel asked Detective Bridges how much time elapsed between the defendant's apprehension and the first taped statement. Defense counsel also explored the half-hour lunch period between the two taped statements. Furthermore, we specifically note that defense counsel did not assert that any new matter surfaced on redirect, nor did he request the opportunity to conduct recross-examination.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOURTEEN
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the opinion testimony of Julia Hallmark regarding the defendant's head wounds. Specifically, he argues that the prosecutor's question to Ms. Hallmark called for an expert opinion.
During the direct examination of Ms. Hallmark, she stated that she had been a Licensed Practical Nurse for twenty-two years and that she was involved in the defendant's medical treatment at the Plaquemines Parish Comprehensive Care Center. She identified State Exhibit 14 (which contained two photographs of the defendant's head wounds) and stated that she presumed they were caused by bullets. Thereafter, when the prosecutor asked her to describe these wounds that she had treated, defense counsel objected that the question called for an opinion as to their medical severity and argued that a proper foundation for such testimony had not been laid. The trial court overruled the objection and stated that Ms. Hallmark could "describe the physical appearance of the *373 wounds without expressing any opinions concerning them." Ms. Hallmark then described the wounds as "superficial."
Obviously, the prosecutor's question did not seek an expert opinion. Instead, in accordance with the trial court's ruling (which we find to be eminently correct), Ms. Hallmark simply was asked to describe the defendant's head wounds. Any lay witness with personal knowledge could give such testimony. See La.Code Evid. art. 602.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FIFTEEN
In this assignment of error, the defendant contends that the trial court erred in restricting defense counsel's cross-examination of Chief Detective Charles Bowles regarding his qualifications to take the defendant's statements. Specifically, he argues that Chief Detective Bowles should have been qualified as an expert witness prior to his testimony about the defendant's confessions in Plaquemines Parish. He further argues that, because a proper foundation was not established for taking the defendant's statements, Chief Detective Bowles should have been disqualified and the defendant's confessions should have been excluded.
On direct examination, Chief Detective Bowles stated that he had been in law enforcement since 1974 and that he had attended numerous special law enforcement training classes. On cross-examination, when defense counsel asked if he ever had been discharged from any police department, Chief Detective Bowles responded in the negative, whereupon the prosecutor immediately objected that this line of questioning was irrelevant. Defense counsel responded that the line of questioning was relevant to "the qualifications of this officer in taking an uncoerced statement from a witness. It's his qualifications as a police officer." The prosecutor responded that any police officer could take a statement, that special training was unnecessary, and that the only prerequisite was an advice of constitutional rights. The trial court sustained the prosecutor's objection.
Initially, we note that both of the defendant's Plaquemines Parish taped statements already had been played to the jury before defense counsel attempted this line of questioning during his cross-examination of Chief Detective Bowles. Furthermore, the defendant has failed to cite any authority whatsoever which could possibly be construed to support his assertion in his brief that police officers must be qualified as expert witnesses in order to testify regarding the taking of statements or confessions. The trial court's ruling sustaining the prosecutor's objection herein was correct.
This assignment of error is meritless and frivolous.

ASSIGNMENT OF ERROR NUMBER SIXTEEN
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the acceptance of Sherry Pool Gutierrez as an expert witness in the fields of crime scene investigation and bloodstain pattern analysis.
Prior to the Louisiana Code of Evidence, the acceptance of a witness as an expert was a matter entrusted to the discretion of the trial court. Its ruling would not be overturned on appeal absent an abuse of discretion. See former La.R.S. 15:466; State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). The adoption of the Code of Evidence has not changed the law. The trial court still retains broad discretion in determining the admissibility of expert testimony and who should or should not be accepted as an expert witness. See Comment (d) to La.Code Evid. art. 702.
Ms. Gutierrez testified that, although she held no formal degrees, she had over 2,200 specialized training hours during her eleven year employment with the Lafayette Parish Sheriff's Department. She stated that she had teaching experience and had published works in these fields. She also indicated that she had received special achievements and some awards during her professional career and that she belonged to various professional organizations. Finally, *374 she stated that she had been accepted as an expert witness in at least four other parishes. Considering these qualifications, we find no error in the trial court's ruling accepting Ms. Gutierrez as an expert witness in the fields of crime scene investigation and bloodstain pattern analysis.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SEVENTEEN
In this assignment of error, the defendant contends that the evidence was insufficient to support his conviction of second degree murder and, therefore, the trial court erred in denying his motion for post verdict judgment of acquittal.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.Code Crim.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984).
La.R.S. 14:30.1 A(1) provides:
Second degree murder is the killing of a human being:
When the offender has a specific intent to kill or to inflict great bodily harm; ....
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). The fact that the defendant shot the victim in the head and face three times at close range indicates a specific intent to kill or inflict great bodily harm. See La.R.S. 14:30.1 A(1); State v. Price, 498 So.2d 244, 247 (La.App. 1st Cir.1986), writ denied, 503 So.2d 474 (La.1987).
In his brief to this Court, the defendant does not deny that he shot the victim. Instead, he refers to some alleged discrepancies in the physical evidence and concludes that the State failed to prove his guilt beyond a reasonable doubt. However, any conflicts in the physical evidence are minor at best and could be explained by the fact that the defendant moved the victim's body into the passenger seat after the shooting and then drove to Port Sulphur before he ran out of gas and abandoned the vehicle. Furthermore, the defendant neglects to mention that he gave detailed, taped confessions to this murder to detectives in both the Plaquemines Parish Sheriff's Department and the Lafourche Parish Sheriff's Department. He also neglects to mention that he admitted shooting the victim to his former girlfriend and her mother during their visit with him at the jail and that he referred to himself as a murderer in a letter to this former girlfriend (State Exhibit 7).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finders determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of second degree murder.
This assignment of error is meritless.
*375 Therefore, for the above reasons the conviction and sentence are affirmed. This matter is remanded to the trial court for the purpose of amending the commitment, if necessary, and the minute entry of the sentencing to reflect that the defendant was given credit for time served.
CONVICTION AND SENTENCE AFFIRMED. REMANDED WITH ORDER.
NOTES
[1] After reviewing the record for patent error, we have discovered that the sentencing minute entry does not reflect that the trial court gave the defendant credit for time served, although the transcript of sentencing does so state. See La. Code Crim.P. art. 880. Resentencing is not required. However, we remand the case and order the district court to amend the commitment, if necessary, and the minute entry of the sentencing to reflect that the defendant was given credit for time served.
[2] In determining whether or not the ruling on the defendant's motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on that motion. Instead, this Court also may consider all pertinent evidence given at the trial of the case. State v. Merchant, 490 So.2d 336, 339 n. 2 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986).