CLARENCE E. McMANUS, Judge.
| ^Defendant, Steven Holden, appeals his conviction of two counts of armed robbery while armed with a firearm. For the reasons which follow, we affirm defendant’s convictions, but vacate the habitual offender sentence and remand for resentencing.

STATEMENT OF THE CASE

On November 6, 2009, the Jefferson Parish District Attorney’s Office filed a bill of information charging the defendant, Steven Holden, and co-defendants, John Robinson and Chadwick Walton, with two counts of armed robbery while armed with a firearm in violation of LSA-R.S. 14:64 and 14:68.3. At the arraignment, defendant pled not guilty. On November 10, 2009, defendant filed various pre-trial motions including a motion to suppress the statement(s), motion to suppress the evidence, and motion to suppress the identification.
On March 4, 2010, the trial court heard and denied defendant’s Motions to Suppress the Statement and Identification. On September 14, 2010, defendant filed a Motion to Reveal the Deal, seeking the identity and content of any deal struck with any State witnesses expected to testify at trial, including co-defendants Robinson and Walton, for the purpose of revealing witness bias. In response, the State notified defendant that with respect to Robinson, the bill of information was amended to two counts of accessory after the fact to armed robbery to which | ^Robinson pled guilty. With respect to Walton, the bill of information was amended to exclude the five-year firearm enhancement pursuant to LSA-R.S. 14:68.3, leaving two counts of armed robbery to which Walton pled guilty. On September 21, 2010, defendant’s motion to reveal the deal was deemed satisfied and this matter proceeded to trial.
A jury trial was held, and the following testimony was presented. Deputy Joshua Collins of the Jefferson Parish Sheriffs Office testified that on September 17, 2009, he was dispatched to the 500 block of Marion Street in Harvey, Louisiana, to meet with two victims of an armed robbery, Stephen Meaux and Christopher Prince. Upon arrival, Deputy Collins spoke with the victims who provided a description of the two suspects who had robbed them at gunpoint and of the vehicle that had been stolen. Once it was discovered that the armed robbery occurred at Gerry’s Place, about four blocks away, Deputy Collins and the two victims relocated back to the scene of the crime where a detailed description of the incident was obtained.
Deputy Collins was advised by a fellow police officer that the stolen vehicle had been located two miles from where the armed robbery had taken place. Upon receiving this information, Deputy Collins drove the two victims to the location of the stolen vehicle and where co-defendant Walton had been apprehended. Without hesitation, both victims made a positive identification of Walton, who matched the description of one of the perpetrators originally given by the victims. Once a positive identification had been made, Deputy Collins received notice that another officer had apprehended a possible second suspect in a white Grand Prix automobile approximately one mile from their current loca *1142 tion. Deputy Collins relocated the victims to the location of the white Grand Prix where three ^individuals had been detained. Of the three suspects, the victims positively identified the defendant, Steven Holden, as one of the perpetrators.
Next, Deputy Jeffrey Reynolds testified that at approximately 3:15 a.m. on September 17, 2009, he received a radio dispatch concerning an armed robbery at Gerry’s Place that involved a stolen vehicle. Rather than reporting to the scene of the robbery, Deputy Reynolds drove to the Woodland West Subdivision, a known location for the disposal of stolen vehicles, located approximately five miles from Gerry’s Place. While in search of the stolen vehicle, Deputy Reynolds received a second dispatch call regarding a white Pontiac Grand Prix bearing license plate number SGE-539, reported to have been involved in the robbery. Deputy Reynolds eventually located the Pontiac Grand Prix in the Woodland West Subdivision. After calling additional units for back-up, Deputy Reynolds pulled the vehicle over and handcuffed the occupants who were later identified as John Robinson (co-defendant), Steven Holden (defendant), and Brittney Autry (Robinson’s girlfriend). Deputy Collins then met Deputy Reynolds at the Woodland West Subdivision with the victims, who positively identified defendant, Steven Holden, as one of the two robbers. After arresting the defendant, Deputy Reynolds conducted a search of the Pontiac Grand Prix. Co-defendant, Chadwick Walton’s Louisiana identification card was found inside the vehicle and it was later learned that Mr. Walton was the driver of the stolen vehicle.
Chadwick Walton testified for the State. He testified that he pled guilty to two counts of armed robbery pertaining to the subject incident involving defendant. Additionally, Mr. Walton testified that he was neither offered nor did he receive a deal from the State in exchange for his testimony or his guilty plea, other than the deletion of the five-year enhancement under LSA-R.S. 14:64.3 from the bill of information.
IsMr. Walton went on to testify that he committed the instant crime of armed robbery with his friends John Robinson and Steven Holden (the defendant), on September 17, 2009. He testified that he was “driving around” with John Robinson (the driver), and defendant (front seat passenger), in a white Pontiac Grand Prix. Both he and the defendant were armed. While driving down Eighth Street towards Gerry’s Place, the men saw two white males talking in the parking lot. Having planned on committing a robbery that evening, Mr. Robinson stopped the car while Mr. Walton and the defendant jumped out and ordered the two men to the ground at gunpoint. Mr. Walton searched one of the men, while the defendant searched the other, taking their keys, phones and wallets. Mr. Walton then jumped in the truck of the victim he had just searched and drove off while the defendant went back to the white Grand Prix. Mr. Walton followed the Grand Prix with Mr. Robinson and the defendant inside, back to his house, where they searched the stolen truck for valuables. At this time, Mr. Walton instructed Mr. Robinson and the defendant to follow him to a nearby location where he could ditch the truck and rejoin Mr. Johnson and the defendant in the Grand Prix. However, before reaching that location, a police unit began following them, prompting Mr. Walton to split off from the Grand Prix in an attempt to evade the police officers. At this time he also threw his gun, and the items taken from the victims, out of the truck. After making a turn down a dead-end street, Mr. Walton jumped out of the vehicle and ran but was later apprehended.
*1143 One of the victims, Stephen Meaux, testified that in the early morning hours of September 17, 2009, he was having band practice with his friend Christopher Prince at Gerry’s Place. After band practice, Mr. Meaux and Mr. Prince were outside in the parking lot talking when a man with dreadlocks wearing a white shirt and a larger man in a black shirt approached them with guns and ordered them to | figet down on the ground. While on the ground, Mr. Meaux observed Mr. Prince looking up at the suspects who yelled for him to put his head down. Mr. Meaux testified that the man with the dreadlocks took his wallet, phone, and keys. After advising the robbers that the nearby truck was his, the man with the dreadlocks took off in his truck. Mr. Meaux did not know where the defendant fled and testified that he never saw a white Grand Prix.
After the robbers fled the scene, Mr. Meaux and Mr. Prince ran to Mr. Meaux’s grandmother’s house located a few blocks from Gerry’s Place where they notified the police about the armed robbery. The police arrived at Mr. Meaux’s grandmother’s house where they provided the officer with details of the armed robbery. Both Mr. Meaux and Mr. Prince were then driven by the police officer to the location where Mr. Meaux’s truck had been recovered. Mr. Meaux positively identified Mr. Walton, the suspect with the dreadlocks, as the person who had stolen his truck. Mr. Meaux and Mr. Prince were then transported to a second location where three people had been stopped in a white Grand Prix. Mr. Meaux positively identified the defendant as the second robber but was unable to identify Mr. Robinson, the driver, as a participant in the robbery. Mr. Meaux was then taken back to his truck where, upon searching the truck found Mr. Prince’s keys and also discovered that his snare drum, some clothing, speaker cables, and his I-Pod were missing.
Mr. Meaux testified that the area around Gerry’s Place was very well lit, thus, he had no difficulty seeing the men clearly as they came around the corner to rob them. According to Mr. Meaux, he even looked “them straight in the face for a good while” before they demanded that they lay face down on the ground. Mr. Meaux then positively identified the defendant in open court as the heavy set male who had robbed him and Mr. Prince at gun point on September 17, 2009.
17Christopher Prince was the last witness to testify. Mr. Prince testified that on September 17, 2009, he had finished band practice and was talking to Mr. Meaux in the parking lot of Gerry’s Place when he heard footsteps and noticed Mr. Meaux looking at something behind him. Upon turning around, two men with guns approached them and ordered them to remove their belongings from their pockets and get down on the ground. Mr. Prince testified that he was able to see the two men clearly because the area was very well lit and the perpetrators were only four or five feet away from him. Since Mr. Prince didn’t believe the two men were going to shoot him, he made it a point to raise his head from the ground and look directly at them. The bigger of the two men, the defendant, was positively identified by Mr. Prince in open court as the individual who had robbed him at gun point of his wallet, keys and cell phone. According to Mr. Prince, the defendant attempted to steal his car but was unable to unlock it so he took off running while the second robber with dreadlocks, Mr. Walton, drove off in Mr. Meaux’s truck.
Mr. Prince and Mr. Meaux called the police who brought them to the location where Mr. Meaux’s truck had been located by the police. Mr. Prince positively identified Mr. Walton as the perpetrator who had stolen Mr. Meaux’s truck. Mr. Prince *1144 testified that he and Mr. Meaux were then transported to a second location where he positively identified the defendant as the other individual who had robbed them.
The defendant rested without presenting any evidence. On September 21, 2010, defendant was found guilty by a twelve-person jury of two counts of armed robbery. On October 12, 2010, defendant filed a motion for new trial, and alternatively to arrest the judgment, which the trial court denied. Thereafter, the trial court sentenced defendant to 50 years at hard labor, on each of the 2 counts, to be served concurrently, in the Department of Corrections, without the benefit of Isprobation, parole, or suspension of sentence. In addition to the 50-year sentences imposed, the court also sentenced the defendant to an additional 5 years at hard labor on each of the 2 counts pursuant to LSA-R.S. 14:64.3, to be served concurrently, and consecutive to the 50 years, without benefit of probation, parole, or suspension of sentence.
On that same date, October 12, 2010, the State filed a multiple offender bill of information alleging the defendant to be a second felony offender. After a hearing was conducted on December 3, 2010, the trial court found that the State had met its burden of proving defendant to be a second felony offender. The trial court then vacated the underlying sentence on count one, and sentenced the defendant to serve 75 years at hard labor, without the benefit of probation or suspension of sentence, to be served concurrently with the 50-year sentence previously imposed on the second count, with credit for time served.[1] On December 6, 2010, defendant filed a Motion to Reconsider sentence which was subsequently denied by the trial court. The defendant now appeals.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that despite having filed a motion to reveal the deal regarding the anticipated testimony of co-defendant, Chadwick Walton, prior to trial, the State failed to disclose the fact that Mr. Walton had been booked on additional felony charges of attempted burglary of an inhabited dwelling and simple burglary, that were pending in the District Attorney’s Screen Division at the time of trial. The only alleged “deal” surrounding the testimony provided by Mr. Walton at trial was a waiver of the five year enhancement under LSA-R.S. 14:64.3. After the trial, the assistant district 19attorney assigned to the case was informed of the pending charges and also learned that the screener had decided to accept charges of attempted simple burglary of an inhabited dwelling and criminal damage in the felony amount of over five hundred dollars. Thus, the defendant asserts that the State’s suppression of this critical impeachment and/or leverage evidence surrounding Mr. Walton’s credibility and motivation to cooperate with the State was a violation of defendant’s due process and constituted grounds for a motion for new trial which was erroneously denied by the trial court.
In response, the State argues that defendant waived his right to assert that a motion for a new trial should have been granted based on the State’s concealment of impeachment evidence, because the defendant failed to assert said objection at trial and thus, waived his right to assert it on appeal. Alternatively, the State argues that had defense counsel cross-examined Mr. Walton with regard to the alleged *1145 impeachment evidence withheld from the defendant, such testimony would not have affected the guilty verdict due to the overwhelming evidence of guilt presented at trial. Thus, the State contends that the guilty verdict rendered at trial was not attributable to any alleged error regarding defendant’s confrontation rights.
The basis for defendant’s first assignment of error rests on a wholly new objection raised for the first time by defendant on appeal, thus, we find that defendant’s assignment of error is not properly presented for appellate review. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise. Uniform Rules, Courts of Appeal, Rule 1-3. In order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La.C.Cr.P. art. 841(A). |inBoth this Court and the Louisiana Supreme Court have recognized that a new basis for an objection may not be raised for the first time on appeal. State v. Cooks, 97-0999, p. 11 (La.9/9/98), 720 So.2d 637, 644, cert. denied, 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999); State v. Burdgess, 434 So.2d 1062, 1067 (La.1983); State v. Winfrey, 97-427, p. 23 (La.App. 5 Cir.10/28/97), 703 So.2d 63, 77, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem, and to prevent the defendant from gambling on a favorable verdict, then resorting to appeal on errors that might easily have been corrected by an objection. State v. Rodriguez, 02-334, p. 42 (La.App. 5 Cir.1/14/03), 839 So.2d 106, 134, writ denied, 03-0482 (La.5/30/03), 845 So.2d 1061; State v. Simmons, 03-20, p. 31 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1261; State v. Hines, 02-397, p. 25 (La.App. 5 Cir. 9/30/02), 829 So.2d 530, 539. Since the defendant did not raise this objection at trial, he failed to preserve the issue for appellate review.
Moreover, Brady[2] challenges, like the one asserted in defendant’s brief, present fact-based judgments that cannot be adequately first made on appellate review. United States, v. Gonzales, 436 F.3d 560, 580 (5 Cir.2006). That is why Brady challenges must be brought to the district court’s attention, winnowed by the trial judge, and made part of the record through a motion for new trial. See United States v. Chomey, 63 F.3d 78, 80-81 (1st Cir.1995); United States v. Jones, 112 Fed.Appx. 343, 344 (5 Cir.2004); State v. Spears, 350 So.2d 603 (La.1977). In this case, the grounds asserted by defendant in his written motion for new trial filed on October 12, 2010, were based on defendant’s objection that: “The evidence does not support a conviction of the crime(s) charged and further, the State of | nLouisiana has failed to prove beyond a reasonable doubt that the defendant was in fact the person who committed the crime(s); The guilty verdict is contrary to the law and evidence. Further, the State presented insufficient evidence of crime(s) being committed by defendant.” Defendant’s written motion for a new trial is void of defendant’s newly asserted objection, raised for the first time in his appeal, that a new trial should be granted premised upon the State’s failure to disclose impeaching evidence in a timely fashion. Moreover, it is important to note that after a lengthy hearing surrounding the alleged “impeachment evidence” regarding the State’s witness, Mr. Walton, defense coun *1146 sel did not object to the newly discovered evidence, nor did he request the trial court take same into consideration with regard to his pending motion for new trial. In fact, when offered the option for oral argument at the hearing on defendant’s motion for new trial, the defense chose to rest on his written motion.
Further, the trial court’s ruling addressed only the objections raised in defendant’s written motion. Specifically, the trial court ruled “that there was, indeed, enough evidence to support the conviction of a crime, and that the State did meet its burden of proof regarding the identity of the perpetrators of this crime. The Court finds that the Guilty Verdict is not contrary to the law and evidence; therefore, the Motion for New Trial is going to be denied.”
Thus, because defendant made no objection to the State’s alleged failure to disclose impeachment evidence in the trial court, we find that the defendant has failed to preserve this issue for review on appeal.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that it was error for the trial court to fail to declare a mistrial when the jurors indicated that they could not reach a verdict. Specifically, the defendant asserts that after having received a note 112from the jury stating “[w]e cannot come to a decision. We are hung,” it was reversible error for the trial court to instruct the jury of the following: “All right. Let me impress upon you that you have only been deliberating for two hours. I also want to impress upon you the importance of this case and I am going to urge you to come to an agreement. And I am going to return you to deliberate.” According to the defendant, the trial court should have accepted the fact that the jury was deadlocked and ordered a mistrial. Instead, the defendant argues the trial court gave the jury an improper Allen[3] charge which ordered them to come to an agreement.
In response, the State argues that because no objection was made at trial to the instructions given to the jury, nor was a request for a mistrial ever made, defendant waived his right to assert this alleged trial court error on appeal. Additionally, even if not proeedurally barred, the State further argues that the judge’s jury instructions were permissive and did not rise to the level of an improper Allen charge, nor did they imply that the court would not accept a mistrial.
In State v. Eugene, 03-1128 (La.App. 5 Cir. 1/27/04), 866 So.2d 985, writ denied, 04-0515 (La.1/14/05), 889 So.2d 263, this Court found that the defendant is not entitled to raise, for the first time on appeal, that the trial judge erred in giving the jury a prohibited Allen charge after the jurors declared they were deadlocked, since defendant did not preserve it for appeal by making a contemporaneous objection or a timely motion for mistrial. In the present case, the jurors retired to deliberate at 7:27 p.m. After deliberating for less than two hours, the jury sent out a note to the judge which read “we cannot come to a decision. We are hung.” Before bringing the jury out, the trial judge advised all | iscounsel of the jury instruction she intended on providing to the jury. With no objection lodged by either side, the trial judge instructed the bailiff to bring the jury back into the courtroom where, at 9:24 p.m., she provided them with the following instructions:
THE COURT: All right. Everyone be seated. Ladies and Gentlemen, I have received a note from you that *1147 says we cannot come to a decision, we are hung. Is that correct?
(ALL INDICATE AFFIRMATIVELY)
THE COURT: All right. Let me impress upon you the fact that you have only been deliberating for less than two hours. I also want to impress upon you the importance of this case and I am going to urge you to come to an agreement. And I am going to return you to deliberate.
Once again, no objection was lodged by the defendant with regard to the trial court’s instructions, nor was a mistrial requested. At 10:30 p.m. the jury returned a verdict of guilty of armed robbery on each of the two counts charged.
In this case, defendant failed to make a contemporaneous objection to the judge’s jury charge at trial, and/or assert a timely motion for a mistrial, thus, defendant has failed to preserve for appellate review his claim that the trial judge erred in giving the jury a prohibited Allen charge after the jurors declared they were deadlocked during deliberations. LSA-C.Cr.P. art. 775; LSA-C.Cr.P. art. 841. Thus, we find the defendant’s second assignment of error is not properly before this Court.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matter was discovered.
|14We find the trial court failed to render a determinate habitual offender sentence as required by La.C.Cr.P. art. 897.[4]
After finding defendant to be a second felony offender, the trial court vacated the underlying sentence on count one, and sentenced the defendant to serve 75 years at hard labor, without the benefit of probation or suspension of sentence, with the sentence to be served concurrently with the 50-year sentence previously imposed on the second count, with credit for time served. However, the trial court did not specify whether the defendant’s habitual offender sentence on count one included an enhanced term of imprisonment under LSA-R.S. 14:64.3, which renders this sentence indeterminate.
LSA-R.S. 14:64.3 provides, in pertinent part:
“When a dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.”
After a review of the record, we find defendant’s sentence is indeterminate because the trial judge did not state whether the 75-year sentence included the firearm enhancement. Because the sentence imposed by the court is indeterminate and constitutes error patent, we vacate the sentence, and remand for resentencing according to law for clarification of whether the defendant’s sentence includes any additional punishment under LSA-R.S. 14:64. 3.
Accordingly, we affirm defendants convictions on counts one and two, affirm defendant’s sentence on count 2, and vacate defendant’s 11fihabitual offender sentence and remand the matter to the trial court for resentencing.

*1148
CONVICTIONS AFFIRMED; SENTENCE ON COUNT TWO AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED;MATTER REMANDED FOR RESENTENCING

. The trial court failed to specify whether the defendant’s habitual offender sentence on count one included an enhanced term of imprisonment under LSA-R.S. 14:64.3 which renders this sentence indeterminate. See error patent section for further discussion.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

. La.C.Cr.P. art. 879 provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."